1203

Angela W. DEWART, Appellant v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Respondent.

(370 S. E. (2d) 915)

Court of Appeals

*Ricky K. Harris* of *Faucette, Haselden & Harris*, Spartanburg, *for appellant.*

*H. Spencer King* of *King, Cothran & Hray*, Spartanburg, *for respondent.*

Heard May 16, 1988.

Decided Aug. 1, 1988.

BELL, Judge:

This is an action in equity for reformation of an insurance contract. Angela W. Dewart seeks to include underinsured motorist coverage in her written contract of insurance with State Farm Mutual Automobile Insurance Company as a remedy for State Farm's alleged failure to comply with Section 1, Act No. 569, Acts and Joint Resolutions of the General Assembly of South Carolina, Regular Session, 1978, 60 Stat. at Large 1668.[1] That statute required automobile insurance carriers to offer their insureds optional underinsured motorist coverage up to the limits of insured liability coverage. The circuit court denied relief. Dewart appeals. We reverse and remand.

In May, 1984, Dewart purchased automobile liability insurance for her Volkswagen automobile from a State Farm

---

[1] Repealed, effective January 1, 1988. *See* Section 25, Act No. 155, Acts and Joint Resolutions of the General Assembly of South Carolina, Regular Session, 1987, 65 Stat. at Large 385, 1072.

agent. The insurance application she signed contained no explanation of underinsured motorist coverage. She did not speak to the agent about her coverage. Dewart paid no additional premium for underinsured motorist coverage and her policy did not include it.

In August, 1984, State Farm mailed to all of its policyholders in South Carolina a nine page booklet entitled "Important Information about Coverages U and W." This booklet purported to explain underinsured motorist coverage and to offer it to the insured. Dewart admittedly received this mailing.

In November, 1984, State Farm sent Dewart a premium renewal notice. Included with the notice was a separate three page insert entitled "Important Information ... Offer of—Coverage U, Coverage W." This insert also purported to explain underinsured motorist coverage and to offer it to the insured. Dewart did not add underinsured motorist coverage to her policy when she renewed it. Neither she nor her husband, who actually made the premium payment, read the insert. Her husband did, however, read the premium renewal notice.

On May 9, 1985, while she was a passenger in the automobile of another, Dewart suffered extensive injuries in a collision. After the accident, Dewart received a tender of the available liability limit on the at fault driver's insurance policy. Since her actual damages exceeded the amount of the at fault driver's insurance, Dewart then made a claim for underinsured motorist benefits under her own policy with State Farm. State Farm denied Dewart's claim on the ground that it made a meaningful offer of underinsured motorist coverage to Dewart, but she chose not to take the coverage when she renewed her policy. This suit followed.

In *State Farm Mutual Automobile Ins. Co. v. Wannamaker*, 291 S. C. 518, 520-521, 354 S. E. (2d) 555, 556 (1987), the Supreme Court held that Section 56-9-831, Code of Laws of South Carolina, 1976, as amended, requires an insurance carrier (1) to offer its insured underinsured motorist coverage up to the limits of the insured's liability coverage; (2) to effectively transmit this offer to the insured; (3) to give the insured the option of accepting or rejecting the offer; and (4) to provide the insured with adequate information, and in

such a manner, as to allow the insured to make an intelligent decision of whether to accept or reject the coverage.

To determine whether an insurer has complied with the statutory mandate, the Court adopted the test formulated by the Minnesota Supreme Court in *Hastings v. United Pacific Ins. Co.*, 318 N. W. (2d) 849 (Minn. 1982). *Hastings* concluded that to make a meaningful offer: (1) the insurer's notification process must be commercially reasonable, whether oral or in writing; (2) the insurer must specify the limits of optional coverage and not merely offer additional coverage in general terms; (3) the insurer must intelligibly advise the insured of the nature of the optional coverage and how it differs from other coverages; and (4) the insurer must tell the insured that optional coverages are available for an additional stated premium. *State Farm v. Wannamaker, supra.*

If the insurer fails to comply with its statutory duty to make a meaningful offer to the insured, the policy will be reformed, by operation of law, to include underinsured motorist coverage up to the limits of liability insurance carried by the insured. *Id.* The insurer has the initial burden of proving that it made a meaningful offer of optional coverage to the insured. *Holman v. All Nation Ins. Co.*, 288 N. W. (2d) 244, 248 (Minn. 1980).

The issue presented by this appeal is whether the premium renewal notice and the accompanying insert which State Farm mailed to Dewart in November, 1984, constituted a meaningful offer as defined in *Wannamaker*.[2]

*Wannamaker* first requires the insurer to give notification of the offer of underinsured coverage in a commercially reasonable manner. State Farm used written materials sent by mail to notify Dewart of the offer. Information about the offer was contained in the renewal notice and the separate insert. Since the premium renewal notice is an important document which the average insured will read, it is reasonably calculated to bring the offer to the insured's attention. The use of the mails is also a reasonable

---

[2] State Farm admits the booklet it sent Dewart in the August, 1984, mass mailing is the same booklet *Wannamaker* held did not constitute a meaningful offer. Therefore, State Farm does not argue the effectiveness of the mass mailing in this appeal. The *Wannamaker* opinion does not state why the nine page booklet failed to meet the *Hastings* test.

method of communicating with the insured about an important business transaction. Accordingly, we conclude that State Farm's notification process was commercially reasonable. *See Jacobson v. Illinois Farmers Ins. Co.*, 264 N. W. (2d) 804 (Minn. 1978); *Squier v. Milwaukee Mutual Ins. Co.*, 356 N. W. (2d) 832 (Minn. App. 1984).

■ *Wannamaker* also requires the insurer to specify the limits of optional coverage and to tell the insured that the coverage is available for an additional stated premium. In this case, the premium renewal notice told Dewart she could purchase optional coverage limits of $15,000/$30,000/$5000 by paying an additional premium of $93.00. It also informed her that she could purchase coverage limits of $25,000/$50,000/$25,000 by paying an additional $97.00. This information satisfied the requirements of *Wannamaker*.

■ Finally, *Wannamaker* requires the insurer to give an intelligible explanation of underinsured motorist coverage in such a manner that the insured can make an informed decision to accept or reject the additional coverage. This means the necessary information must be conveyed in a format and in language that make it readily understandable to a person of common intelligence.

In this case, the premium renewal notice contains no explanation of underinsured motorist coverage. In fact, the notice does not even use the words "underinsured motorist" or "underinsured motor vehicle." Instead it refers only to "coverage W" with no explanation of what coverage W is. To obtain an explanation of underinsured motorist coverage, the insured must read the separate insert mailed with the renewal notice. There, under a heading "About Coverage W, Underinsured Motor Vehicle," is a brief paragraph defining the coverage. Nothing printed on the premium renewal notice directs the insured to read this critical information in the insert.

The format State Farm used in this instance was not reasonably calculated to draw attention to the explanation of underinsured motorist coverage. The company's own internal Process Guide indicated the premium renewal notice should contain a renewal message stating: "SEE INSERT REGARDING UNDERINSURED MOTOR VEHICLE COV-

ERAGE, COVERAGE W. . . ." No such message was printed on Dewart's notice. State Farm has given no explanation for failing to follow its own internal policy in this regard.

It is common knowledge that bills received in the mail are often accompanied by leaflets, brochures, booklets, or other insertions known as "junk mail." These insertions are used by credit card companies, oil companies, utility companies, insurance companies, merchandisers, and others to inundate the customer with offers and advertisements wholly unrelated to the bill itself. Many recipients of these "stuffers" undoubtedly ignore and discard them as a matter of routine. In order for State Farm's insert not to be ignored as such "junk mail," it was incumbent upon the company, as its own internal policy recognized, to include something on the renewal notice alerting the insured to read the insert. Placing critical information in two documents, without directing the insured to read both, was not a method reasonably calculated to draw the insured's attention to the nature of the offer. On the contrary, by splitting the information into separate documents without alerting the insured, State Farm conveyed the offer in a manner likely to keep the insured from finding an important explanation needed to understand it and to make an informed decision. This alone was sufficient to fail the *Wannamaker* test. We need not go further to determine whether the language in the insert provided a complete and readily understandable explanation of the optional coverage.

For the reason given, we hold that State Farm failed to make a meaningful offer of underinsured motorist coverage to Dewart. The judgment of the circuit court is reversed and the case remanded with directions to reform the policy to afford underinsured motorist coverage up to the limits of Dewart's liability coverage.

Reversed and remanded.

SANDERS, C. J., and LITTLEJOHN, Acting Judge, concur.