2377

Sherri L. OSBORNE, Appellant v. ALLSTATE
INSURANCE COMPANY, Respondent.

(462 S.E. (2d) 291)

Court of Appeals

---

480

*Jim S. Brooks*, Spartanburg, *for appellant.*

*W. Francis Marion, Jr.*, Greenville, *for respondent.*

Heard May 2, 1995.

Decided July 17, 1995; Reh. Den. Sept. 21, 1995.

CURETON, Judge:

Appellant, Sherri L. Osborne, brought declaratory judgment action, claiming Respondent, Allstate Insurance Company, failed to make an effective offer of underinsured motorist (UIM) coverage and seeking reformation of her automobile policy with Allstate so as to include UIM coverage. Both parties moved for summary judgment. The court denied Mrs. Osborne's motion but granted summary judgment for Allstate. Mrs. Osborne appeals. We reverse and remand.

Prior to 1988, Mrs. Osborne was the named insured under a policy with Allstate. In 1988, Mrs. Osborne married Charles Osborne and added him to the policy as a named insured. Between May 1988 and May 1990, both Mr. and Mrs. Osborne made changes to the policy. On each occasion, the Osbornes dealt with agent James W. Fleming.

On April 9, 1990, Allstate issued a renewal notice for the policy to the Osbornes. The declaration page notes:

> See enclosed form describing offers of uninsured and underinsured motorist coverages.

Attached to the premium notice was an offer to purchase optional uninsured (UM) and UIM coverages. The offer was contained in Allstate Form No. U10774, which had been approved by the South Carolina Department of Insurance.

On May 11, 1990, Mr. Osborne went to Fleming's office to discuss the Osbornes' coverage. Mr. Osborne signed Allstate Form No. U10774-1 which rejected the offer of UIM coverage and as a consequence UIM coverage was not included in the policy. The basic coverage of 15,000/30,000/5,000 afforded under the policy continued in force and effect through December, 1991.

On December 6, 1991, Mrs. Osborne was injured in an automobile accident. She claimed damages in excess of the at-fault party's liability limits. Mrs. Osborne put Allstate on notice of

a possible UIM claim. Allstate denied UIM coverage was available based upon the rejection form signed by Mr. Osborne.

Mrs. Osborne commenced the instant action, claiming (1) Allstate failed to make a valid offer of UIM coverage, and (2) even if the offer was valid and UIM coverage was properly rejected by Mr. Osborne, he had no authority to act on her behalf and, therefore, the rejection of UIM coverage was ineffective as to her.

The trial court found that under S.C. Code Ann. § 38-77-350 (Supp. 1994), an insurance company is conclusively presumed to have made a valid offer if it followed the statutory scheme. The court found it "unrefuted" Allstate offered the Osbornes UIM coverage on a form approved by the Insurance Commissioner and that Mr. Osborne, a named insured, rejected the coverage. The trial court also held Mr. Osborne's actions binding upon Mrs. Osborne under the theory of apparent authority. Accordingly, the trial court granted Allstate's motion for summary judgment. This appeal followed.

## I.

Mrs. Osborne first claims the trial court erred in granting Allstate's motion for summary judgment because Allstate failed to include in its offer of UIM coverage a quote for insurance amounts less than the minimum liability coverage required by law, to wit, an amount of UIM coverage under $15,000.[1]

S.C. Code Ann. § 38-77-160 (Rev. 1989) mandates the offering of UIM motorist coverage as follows:

> Automobile insurance carriers shall offer, at the option of the insured, . . . underinsured motorist coverage up to the limits of the insured liability coverage to provide cov-

---

[1] The denial of summary judgment is not directly appealable, since it decides nothing about the merits of the case, only that the case should proceed to trial. *Ballenger v. Bowen,* 313 S.C. 476, 443 S.E. (2d) 379 (1994). However, since the court granted Allstate's motion for summary judgment, the case was ended, and that decision is directly appealable. S.C. Code Ann. § 14-3-330 330 (1976); *Link v. School District of Pickens County,* 302 S.C. 1, 393 S.E. (2d) 176 (1990). An order which is not directly appealable will nonetheless be considered if there is an appealable issue before the Court and a ruling on appeal will avoid unnecessary litigation. *Hite v. Thomas & Howard Co.,* 305 S.C. 358, 409 S.E. (2d) 340 (1991).

erage in the event that damages are sustained in excess of the liability limits carried by an at fault insured or underinsured motorist. . . .[2]

In the recent case of *White v. Allstate Ins. Co.*, 314 S.C. 167, 442 S.E. (2d) 195 (Ct. App. 1994), *cert. denied,* November 3, 1994, this Court stated:

> Section 38-77-140 mandates that automobile insurance carriers offer coverage of not less than 15/30/5. S.C. Code Ann. § 38-77-140 (1989). In addition, carriers must offer minimal limits of uninsured (UM) coverage of not less than 15/30/5. S.C. Code Ann. § 38-77-150 (1989). The statutory provision for UIM coverage, however, is devoid of any minimum offer requirement.
>
> Although UIM coverage may be distinguished from liability and UM coverage because UIM coverage is not mandated by statute, it seems clear that had the legislature intended there to be a minimum offer requirement for UIM coverage it would have done so. In addition, the clear and unambiguous language of the statute requires UIM coverage to be offered up to the limits of the insured's liability coverage.

*Id.,* 442 S.E. (2d) at 196.

> *White* does not control the outcome of this case, however, because the policy at issue in *White* apparently predated the effective date of § 38-77-350 (Supp. 1994),

and this Court did not have the opportunity to address that statute in its opinion. Section 38-77-350 is captioned "Form to be used when optional coverages are offered" and states:

> (A) Not later than September 1, 1989, the Chief Insurance Commissioner shall approve a form which automobile insurers shall use in offering optional coverages required to be offered pursuant to law to applicants for automobile insurance policies. This form must be used by insurers for all new applicants after December 1, 1989. The form, at a minimum, must provide for each optional coverage required to be offered:

---

[2] This section was amended by 1994 S.C. Act No. 461, § 7, effective June 29, 1994. The amendment is not applicable to this action.

(1) a brief and concise explanation of the coverage,

(2) *a list of available limits and th range of premiums for the limits,*

(3) a space for the insured to mark whether the insured chooses to accept or reject the coverage and a space for the insured to select the limits of coverage he desires,

(4) a space for the insured to sign the form which acknowledges that he has been offered the optional coverages,

(5) the mailing address and telephone number of the Insurance Department which the applicant may contact if the applicant has any questions that the insurance agent is unable to answer.

(B) *If this form is properly completed and executed by the named insured it is conclusively presumed that there was an informed, knowing selection of coverage and neither the insurance company nor any insurance agent has any liability to the named insured or any other insured under the policy for the insured's failure to purchase any optional coverage or higher limits.*

\* \* \* \* \* \*

(D) *Compliance with this section satisfies the insurer and agent's duty to explain and offer optional coverages and higher limits and no person, including, but not limited to, an insurer and insurance agent is liable in an action for damages on account of the selection or rejection made by the named insured.*

\* \* \* \* \* \*

(Emphasis added.) Sections 38-77-160 and 38-77-350 cover the same subject matter, i.e., the offer of optional insurance coverages for automobiles, and, therefore, must be construed together and as explanatory of each other. *See Home Health Services, Inc. v. DHEC*, 298 S.C. 258, 379 S.E. (2d) 734 (Ct. App. 1989) (statutes which deal with the same subject matter are in *pari materia* and must be construed together, if possible, to produce a single, harmonious result); *In re Asbestosis Cases*, 274 S.C. 421, 266 S.E. (2d) 773 (1980) (where there are different statutes in *pari materia*, though enacted at different times, and not referring to each other, they are to be taken

and construed together as one system, and as explanatory of each other).

Section 38-77-160 mandates insurers offer UIM coverage "up to the limits of the insured liability coverage," which in this case was the minimum $15,000. Section 38-77-350 requires an insurer to use a form approved by the Chief Insurance Commission when offering optional coverages, including UIM, and by using the approved form the offer is conclusively presumed to be effective. § 38-77-350(B). The form approved by the Commissioner must include "a list of *available* limits and the range of premiums for the limits. . . ." § 38-77-350(A)(2) (Emphasis added.) Allstate argues that the use of the language *available limits* connotes that insurers may offer but are not required to make UIM coverage available in amounts less than the minimum liability coverage. Hence, if it provided UIM coverage to its insureds in amounts less than $15,000, its offer would have been ineffective because it did not list the coverages available. Conversely, Osborne argues the Legislature did not intend by the enactment of § 38-77-350 to modify the requirements of § 38-77-160 which have been interpreted by this court and the Supreme Court to require insurers to offer UIM coverage in amounts less than the minimum liability limits. *See Hanover Ins. Co. v. Horace Mann Ins. Co.*, 301 S.C. 55, 389 S.E. (2d) 657 (1990); *Garris v. Cincinnati Ins. Co.*, 280 S.C. 149, 311 S.E. (2d) 723 (1984); *White v. Allstate Ins. Co.*, 314 S.C. 167, 442 S.E. (2d) 195 (Ct. App. 1994); *American Sec. Ins. Co. v. Howard,* 315 S.C. 47, 431 S.E. (2d) 604 (Ct. App. 1993).

In the recent federal district court case of *Holt v. State Farm Mut. Auto. Ins. Co.,* 870 F. Supp. 658, 666 (D.S.C. 1994), Judge Norton reviewed the development of the statutory and case law of South Carolina on UIM coverage and concluded that:

> [a]lthough there is language in the case law, originating in *Garris* in 1984 and recently applied in *White,* that when read literally would appear to require the insurance companies to provide offers in "any amount" up to the insured liability coverage, this court finds that such an interpretation cannot be resolved with reasonableness of the *Wannamaker* test and the legislative intent em-

bodied in S.C. Code Section 38-77-350. . . . To the extent that such a requirement is inconsistent with Section 38-77-350, this court believes the state's highest court would find that the legislature, having spoken on the issue, expressed its clear intent to afford an insurance company a conclusive presumption of validity once its offer form meets the requirements of that section.

Mrs. Osborne argues that Allstates' interpretation of § 38-77-350 could lead to abuse by the Insurance Commissioner, who could approve a form which makes no offer of UIM or who could arbitrarily change the amount of uninsured motorist coverage required. She claims this means § 38-77-350 would give the Commission the ability to ignore statutory requirements or supersede them by administrative decision. We agree with Mrs. Osborne that § 38-77-350 does not modify the requirements of § 38-77-160 as to what coverage must be offered by insurers. 1989 Act No. 148 amended both §§ 38-77-160 and 38-77-350. By amending both sections at the same time the legislature clearly demonstrated its intention that both sections should continue in force. Section 38-77-350(A) states the Commissioner shall approve a form for use in offering optional coverages "required to be offered pursuant to law," and sets out what the form must include "at a minimum." Certainly, the legislature was aware of the court's interpretation of § 38-77-160 as to what UIM coverage offers were required to be made. *Gaffney v. Mallory*, 186 S.C. 337, 195 S.E. 840 (1938) (court has power to construe a statute in light of circumstances existing at the time of enactment). Therefore, if the form presented by an insurer to the Commissioner does not include an offer of the optional coverage required by law to be offered to applicants for automobile insurance, or does not include the items listed in the statute, the Commissioner could not legally approve the form, and the insurer would not benefit from the protections of § 38-77-350.

In this case, while Allstate's locally promulgated form was apparently approved by the Commissioner, it is not identical to SCDI Form Number 2006 promulgated by the Commissioner and forwarded by the Commissioner to insurance carriers on August 18, 1989. While the stated limits of coverage are essentially the same in both Allstate's form and the Com-

missioner's SCDI Form Number 2006, the Commissioner's form additionally states:

> Some of the more commonly sold limits of underinsured motorist coverage, together with the additional premiums you will be charged, are shown upon this Form. If there are *other limits in which you are interested, but which are not shown upon this Form, then fill in those limits. If your insurance company is allowed to market those limits within this State, your insurance agent will fill-in the amount of increased premiums.* (Emphasis ours.)

After a listing of "limits of coverage," a space is provided for the applicant to write in the coverage he desires. As we read § 38-77-350, an insurer is fully protected from any claim of an ineffective offer only if it uses the form provided by the Commissioner. § 38-77-350(B). Because Allstate's form, though approved by the Commissioner, does not contain the identical provisions of the Commissioner's SCDI Form Number 2006 and does not comply with the requirements of §§ 38-77-160 and 38-77-350(A), we hold Allstate is not entitled to the protections afforded by § 38-77-350(B).

Allstate focuses our attention on the *Holt v. State Farm* case where our federal district court concluded it would not be commercially reasonable to require an insurer to offer premium quotes for amounts of UIM coverage from one cent to the limits of the insured liability coverage. This precise argument was made in *White v. Allstate* and rejected by this court. We are, however, concerned with this seemingly impractical requirement. During oral argument, and in her brief, Mrs. Osborne addressed this argument. She responds that while under the law an insurer is required to offer UIM coverage quotes for amounts above the minimum limits and up to the limits of liability coverage, no one would contend that an insurer must provide quotes for premiums in such small increments to an insured who purchases more than the minimum liability coverage. Yet, clearly some limits of coverage must be offered above the minimum coverage and up to the limits of liability coverage in such instances. Likewise, she responds that a reasonable compliance with § 38-77-160 does not require offers in unreasonable small increments

below the minimum level of liability coverage. She suggests that even one offer of UIM coverage below the minimum liability limit may suffice if approved by the Commissioner.

We see Allstate's argument as basically disingenuous. ■■ While insureds may complain they have not received sufficient offers of UIM coverage regardless of the number of increments the offer is broken down into, we hold that the Commissioner has discretion to approve the sufficiency of offers of UIM coverage under § 38-77-350. However, he has no discretion to approve offers that do not make it clear to applicants that they may obtain UIM coverage for amounts less than the minimum liability coverages required by § 38-77-160. We, therefore, reverse the trial court's conclusion that because Allstate's offer form was approved by the Commissioner, it is conclusively presumed to comply with the requirements of both §§ 38-77-160 and 38-77-350. We find Allstate's offer of UIM coverage to be ineffective because it did not indicate to the Osbornes that UIM coverage could be obtained in amounts less than the minimum liability limits of their policy.

## II.

Having determined that Allstate's offer of UIM was ineffective, we need not reach the second issue presented by Mrs. Osborne on appeal. Accordingly, the order of the trial court is reversed and the case remanded to the trial court for entry of an order consistent with this opinion.

Reversed and remanded.

SHAW and CONNOR, JJ., concur.