528 S.E.2d 693

**Doris S. RABB, Appellant,**

v.

**CATAWBA INSURANCE COMPANY, Respondent.**

**No. 3123.**

Court of Appeals of South Carolina.

Submitted Jan. 11, 2000.

Decided Feb. 22, 2000.

Rehearing Denied May 6, 2000.

Frank A. Barton, of West Columbia; and J. Marvin Mullis, Jr., of Mullis Law Firm, of Columbia, for appellant.

William P. Davis, of Baker, Barwick, Ravenel & Bender, of Columbia, for respondent.

HEARN, Justice:

Doris S. Rabb appeals the circuit court's grant of summary judgment to Catawba Insurance Company in her action to

reform two insurance policies to provide underinsured (UIM) coverage. She contends Catawba's offer of UIM coverage was not meaningful because, at the time of the offer, Catawba was not authorized to sell such coverage in amounts less than $15,000. We disagree and affirm.

## FACTS/PROCEDURAL HISTORY

Doris Rabb was injured in an automobile accident on October 19, 1994. At the time of the accident, Rabb was a passenger in a vehicle driven by her daughter, Karen Rabb. The two policies involved in this action belonged to Karen Rabb, and Willie Rabb, the husband of Doris Rabb. Rabb was not a named insured under either policy, and neither policy contained UIM coverage, both policy owners having rejected such coverage in writing on forms approved by the Chief Insurance Commissioner of South Carolina (Commissioner).

Rabb brought this reformation action against Catawba seeking to reform both policies to provide UIM coverage, claiming that Catawba unreasonably and wilfully failed to offer such coverage.[1] By way of an amended answer and counterclaim, Catawba sought a declaratory judgment that it made meaningful offers of UIM coverage and Rabb was therefore not entitled to reformation of the two policies. Catawba subsequently moved for summary judgment, contending its forms made meaningful, effective offers of UIM coverage as matter of law.

After a brief hearing, the circuit court granted Catawba's motion for summary judgment. The court found that the offers of UIM coverage were indeed meaningful and effective in that each form includes language which was quoted with approval in this court's decision in *Osborne v. Allstate Ins. Co.*, 319 S.C. 479, 462 S.E.2d 291 (Ct.App.1995), and the supreme court's decision in *Butler v. Unisun Ins. Co.*, 323 S.C. 402, 475 S.E.2d 758 (1996). In response to Rabb's argument that the offers could not have been meaningful because Catawba did not have approval from the South Carolina Department of

---

1. Rabb's complaint also contained a purported "bad faith" cause of action against Catawba for wilful failure to offer UIM coverage. Because we find Catawba's offer of UIM coverage meaningful and effective, we need not address this cause of action.

Insurance (Department) for any premium rates for UIM coverage in amounts less than the basic limits of $15,000, the court found that whether such rates had been approved was irrelevant insofar as both offers had been rejected. The court further responded that, had any offer been accepted for which Catawba had not obtained approval, such approval could then have been obtained from the Department. Finally, the court noted that nothing prohibited an insurer from offering UIM coverage in amounts less than the minimum liability limits without having obtained prior approval of premium rates for such limits from the Department.

## LAW/ANALYSIS

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56(c), SCRCP. When ruling on a motion for summary judgment, the evidence and the inferences which can be drawn therefrom should be viewed in the light most favorable to the non-moving party. *Café Assocs., Ltd. v. Gerngross*, 305 S.C. 6, 406 S.E.2d 162 (1991).

There are no factual disputes in the case at bar. There is no question but that both Karen Rabb and Willie Rabb rejected Catawba's offers of UIM coverage. Additionally, there is no dispute that, at the time of the offers, Catawba had not sought or obtained approval from the Department for premium rates for UIM coverage under the minimum $15,000 limits which the Rabbs contracted for. Thus, this appeal must answer two questions: First, did the form provided by Catawba and approved by the Commissioner make an otherwise meaningful offer of UIM coverage? Second, if the offer was otherwise meaningful, did Catawba's failure to have advance approval for premium rates for UIM coverage under the minimum $15,000 limits render the offer ineffective?

### "Meaningful Offer"

S.C.Code Ann. § 38–77–160 (Supp.1999) provides that automobile insurance carriers "shall ... offer, at the option of the insured, underinsured motorist coverage up to the limits of the

insured liability coverage." This court and the supreme court have issued a number of opinions addressing this statutory mandate. The provision has been interpreted to require that underinsured motorist coverage in any amount up to the insured's liability coverage must be offered to a policyholder. *See Garris v. Cincinnati Ins. Co.*, 280 S.C. 149, 311 S.E.2d 723 (1984). Additionally, in *State Farm Mut. Auto. Ins. Co. v. Wannamaker*, 291 S.C. 518, 354 S.E.2d 555 (1987), the supreme court formulated a four element test for determining whether an insurer has complied with its duty to offer optional coverages: (1) the insurer's notification process must be commercially reasonable, whether oral or in writing; (2) the insurer must specify the limits of optional coverage and not merely offer additional coverage in general terms; (3) the insurer must intelligibly advise the insured of the nature of the optional coverage; and (4) the insured must be told that optional coverages are available for an additional premium. If the insurer fails to comply with this duty, the policy will be reformed, by operation of law, to include UIM coverage up to the limits of liability insurance carried by the insured. *Butler*, 323 S.C. at 405, 475 S.E.2d at 760 (citing *Dewart v. State Farm Mut. Auto. Ins. Co.*, 296 S.C. 150, 370 S.E.2d 915 (Ct.App.1988)).

S.C.Code Ann. § 38–77–350(A) (Supp.1999), apparently passed in response to *Wannamaker*, provides requirements for forms used in making offers of optional insurance coverage like UIM coverage including:

(1) a brief and concise explanation of the coverage,

(2) a list of available limits and the range of premiums for the limits,

(3) space for the insured to mark whether the insured chooses to accept or reject the coverage, and a space to select the limits of coverage desired,

(4) a space for the insured to sign the form, acknowledging that the optional coverage has been offered, and

(5) the mailing address and telephone number of the Department, so that the insured may contact it with any questions that the insurance agent is unable to answer. Additionally, subsection (B) provides that:

If this form is properly completed and executed by the named insured it is conclusively presumed that there was an informed, knowing selection of coverage and neither the insurance company nor any insurance agent has *any liability to the named insured or any other insured* under the policy for the insured's failure to purchase any optional coverage or higher limits.[2]

S.C.Code Ann. § 38–77–350(B) (Supp.1999) (emphasis added).

■ The form at issue in this case clearly complies with each of these requirements. However, compliance with these requirements does not satisfy the requirement of an offer "up to the limits" of liability coverage as required by § 38–77–160. *See Osborne,* 319 S.C. at 488, 462 S.E.2d at 296. Moreover, just because the form has been approved by the Commissioner, as is the case here, the insurer has not necessarily passed the "meaningful offer" test. *See Wilkes v. Freeman,* 334 S.C. 206, 211, 512 S.E.2d 530, 533 (Ct.App.1999), *cert. denied,* Aug. 23, 1999.

■ In *Butler,* the supreme court favorably quoted the following language, also approved by this court in *Osborne,* as satisfying the requirements of a meaningful offer of UIM coverage up to the limits of liability coverage:

Some of the more commonly sold limits of underinsured motorist coverage, together with the additional premiums you will be charged, are shown upon this Form. If there are other limits in which you are interested, but which are not shown upon this Form, then fill in those limits. If your insurance company is allowed to market those limits within this State, your insurance agent will fill-in the amount of increased premium.

323 S.C. at 408, 475 S.E.2d at 761. The form in the present case, after presenting a number of split limit and single limit UIM coverage amounts and their accompanying premium costs, provides blanks in which to fill in a different coverage

---

**2.** Subsection (D) also protects the insurer and its agent from an "action for damages on account of the selection or rejection made by the named insured." While this began as an action for damages, the issue on appeal involves reformation of the policy as opposed to straight money damages.

amount and blanks for the premium amounts to be filled in. Additionally, the form contains the following options:

Do you wish to purchase underinsured motorist coverage? If "No" is your answer, you must sign here: _____

If you do not answer "No", this coverage will be added to your policy with limit(s) equal to your liability limit(s) unless lower limit(s) are selected. To select your limit(s), complete the following statement: I want split limits of:

$__,000/$__,000/$__,000 or a combined single limit of $__,000.

Clearly, the form provides the insured with the opportunity to select coverage in any amount, including amounts up to the limits of liability coverage. As such, Catawba undoubtedly made a meaningful, effective offer of UIM coverage, requiring our first question to be answered in the affirmative.

### Prior approval of Department

■ In response to the second question, we first note that our research reveals no case in South Carolina addressing this issue. In light of the factual background in this case, it need not be addressed here either.

Rabb correctly points out that S.C.Code Ann. § 38–73–920 (Supp.1999) provides that no insurer may *make* or *issue* any insurance contract or policy except in accordance with its filings with the Department as to approved premium amounts. It is undisputed that, in this case, Catawba did not have filings with the Department for premium amounts for UIM coverage below the minimum $15,000 liability limit. Therefore, Rabb argues, any *offer* by Catawba of UIM in amounts less than this limit is meaningless, entitling her to reformation of the two policies.

In light of our analysis of the offers at issue in this case, and the policy owners' explicit rejection of those offers, this argument is unavailing. In the words of former Chief Judge Alex Sanders: "[W]hatever doesn't make any difference, doesn't matter." *McCall v. Finley*, 294 S.C. 1, 4, 362 S.E.2d 26, 28 (Ct.App.1987). We agree with the circuit court that whether or not Catawba was authorized to sell UIM coverage in amounts less than $15,000 is irrelevant since both named

insureds expressly rejected otherwise meaningful offers of such coverage.

The circuit court's order is hereby

**AFFIRMED.**

HOWELL, C.J., and CURETON, J., concur.