536 S.E.2d 693

**Jason C. BOWER, Appellant,**

**v.**

**NATIONAL GENERAL INSURANCE COMPANY and Catawba Insurance Company, Defendants,**

**of whom National General Insurance Company is, Respondent.**

No. 3234.

Court of Appeals of South Carolina.

Heard June 7, 2000.
Decided July 31, 2000.
Rehearing Denied Nov. 4, 2000.

316

Gene M. Connell, Jr., of Kelaher, Connell & Connor, of Surfside Beach, for appellant.

William C. Wood, Jr., of Nelson, Mullins, Riley & Scarborough, of Columbia, for respondent.

SHULER, Judge:

In this declaratory judgment action, Jason Bower sought reformation of his father's automobile insurance contract issued by National General Insurance Company to include underinsured motorist (UIM) coverage. Both parties moved for summary judgment. The trial court denied Bower's request for reformation and granted summary judgment to National General. Bower appeals. We reverse and remand.

## FACTUAL BACKGROUND

In February 1997, Jason Bower, while a passenger in someone else's car, was injured in a wreck. The owner of the car in which Bower was riding did not have UIM coverage. Bower, living with his father Robert at the time of the accident, filed a claim for UIM coverage with his father's insurance carrier, National General. National General denied the claim, asserting Robert Bower had rejected its offer of UIM coverage.

Jason Bower subsequently filed this action alleging National General failed to make a meaningful offer of UIM coverage. Based on this alleged failure, Bower sought reformation of the policy to include UIM coverage up to the policy's limits of $100,000 per person, $300,000 per occurrence, and $50,000 for property damage. The case was referred to a master-in-equity with appeal directly to the Supreme Court. The master concluded National General made a meaningful offer of UIM coverage that was rejected by Robert Bower and granted summary judgment to National General. Bower appeals.

## LAW/ANALYSIS

■ Pursuant to South Carolina Code section 38–77–160, automobile insurers must "offer, at the option of the insured, underinsured motorist coverage up to the limits of the insured liability coverage...." S.C.Code.Ann. § 38–77–160 (Supp. 1999). To fulfill this statutory obligation, an insurer's offer of UIM coverage must be "meaningful." *State Farm Mut. Auto. Ins. Co. v. Wannamaker,* 291 S.C. 518, 354 S.E.2d 555 (1987). In order to constitute a meaningful offer:

(1) the insurer's notification process must be commercially reasonable, whether oral or in writing; (2) the insurer must specify the limits of optional coverage and not merely offer additional coverage in general terms; (3) the insurer must intelligibly advise the insured of the nature of the optional coverage; and (4) the insured must be told that optional coverages are available for an additional premium.

*Id.* at 521, 354 S.E.2d at 556. When offering optional coverages, the insurer must offer UIM coverage *in any amount* up to the policy limits. *Todd v. Federated Mut. Ins. Co.,* 305 S.C. 395, 409 S.E.2d 361 (1991) (emphasis added).

■ The insurer bears the burden of establishing it made a meaningful offer of UIM coverage. *Butler v. Unisun Ins. Co.*, 323 S.C. 402, 475 S.E.2d 758 (1996). If an insurer fails to make a meaningful offer, the policy will be reformed by operation of law to include UIM coverage up to the limits of liability insurance carried by the insured. *Id.* It is irrelevant that the insured rejects UIM coverage, as a "noncomplying offer has the legal effect of no offer at all." *Hanover Ins. Co. v. Horace Mann Ins. Co.*, 301 S.C. 55, 57, 389 S.E.2d 657, 659 (1990). The question of whether an offer of UIM coverage is sufficient is a question of law for the court. *Id.*

■ In the present case, Bower contends National General failed to satisfy the fourth element of the *Wannamaker* test because its offer did not inform him of the right to select optional coverages not listed on its form. We agree.

National General's offer form contained the following language:

> You have a right ... to buy underinsured motorist coverage in limits up to the limits of liability coverage you will carry under your automobile insurance policy. The limits of underinsured motorist coverage ... are shown upon this Form.

The form then identified three choices of both bodily injury and property damage UIM coverages equal to or less than Bower's liability limits.[1]

In *Wilkes v. Freeman,* 334 S.C. 206, 512 S.E.2d 530 (Ct.App. 1999), *cert. denied* (August 23, 1999), this Court addressed similar language in the context of whether an insured made a meaningful offer. In *Wilkes,* the insurer's offer form stated: "[A]ll of the limits of underinsured motor vehicle coverage we sell, together with the additional premiums you will be charged, are shown on this form." *Id.* at 208, 512 S.E.2d at 531. The policy then listed three UIM coverage options that were equal to or less than Wilkes' liability limits.

In determining whether a meaningful offer had been made, this Court recognized that an offer of UIM "must contain

---

1. National General's form failed to list UIM coverage amounts of 15,000/30,000/5,000, even though National General was authorized to sell those amounts.

language describing how the insured may request coverage 'up to' his liability limits, but *different* from those amounts listed on the insurer's form." *Id.* at 212, 512 S.E.2d at 533 (emphasis added). The Court stated "merely listing several available options without providing a clear description on how the applicant may request other limits is insufficient to discharge the insurer's duty under section 38–77–160." *Id.* at 211–12, 512 S.E.2d at 533. The Court then held that the insurer failed to make a meaningful offer when it provided no indication that the insured could have requested coverage amounts other than those amounts listed on the form.

While National General's form does state that the insured is entitled to purchase UIM insurance in amounts up to the liability limits, that statement is immediately followed by language indicating that the available limits are those identified on the form. This language can be fairly construed as an offer to purchase *only* those coverage amounts identified on the form so long as none of the amounts exceed the insured's current liability limits. *See Yarborough v. Phoenix Mut. Life Ins. Co.*, 266 S.C. 584, 225 S.E.2d 344 (1976) ("It is well settled that in construing an insurance contract, all of its provisions should be considered. . . . Presumably, all portions of a contract are inserted for a purpose and the contract must be read as a whole, giving appropriate weight to all provisions."); *Diamond State Ins. Co. v. Homestead Indus.*, 318 S.C. 231, 456 S.E.2d 912 (1995) (noting that to the extent there are conflicting or ambiguous provisions, we must construe the language in favor of coverage). Had National General intended the listed coverages to be mere examples of available coverages or the most common coverages chosen, it certainly could have said so.[2]

National General contends that the case at bar is controlled by *Norwood v. Allstate Insurance Co.*, 327 S.C. 503, 489 S.E.2d 661 (Ct.App.1997). We disagree.

In *Norwood*, this Court held that where an offer form listed at least three specific options of UIM coverage below Norwood's liability limits, coupled with plain language notifying

---

**2.** In fact, National General's form once contained language stating that other coverage limits were available but not shown upon the form. National General, however, elected to delete that language.

her that she could increase or decrease her UIM coverage, the requirements of section 38–77–160 were satisfied. The form in *Norwood,* however, unlike the form in this case or in *Wilkes,* gave no indication that the coverages listed were the only options offered. Moreover, Norwood understood that the options listed were not the only coverages available, as she struck through one of the listed policy amounts for uninsured (UM) coverage and wrote in a different amount not on the form. The Court noted that the instructions for selecting UM and UIM coverages were "practically identical." *Id.* at 507, 489 S.E.2d at 663.

Because Robert Bower was not apprised of his right to choose any amount of UIM coverage, including coverages not listed on the form, National General failed to make a meaningful offer. Accordingly, we reverse the grant of summary judgment in favor of National General and remand to the trial court for entry of summary judgment in favor of Bower and reformation of the contract up to the liability limits.

**REVERSED AND REMANDED.**

CURETON, J., concurs.

GOOLSBY, J., dissents in a separate opinion.

GOOLSBY, Judge (dissenting):

I believe Bower failed to show the trial court committed reversible error in holding the offer of underinsured (UIM) coverage at issue here was legally sufficient.

Under South Carolina Code section 38–77–160, automobile insurers must offer, at the insured's option, UIM coverage "up to the limits of the insured liability coverage. . . ."[1] The form to be used in offering such coverage must include, among other things, "a list of available limits and the range of premiums for the limits."[2]

Our supreme court has adopted the following criteria for determining whether an insurer has made a meaningful offer of UIM coverage:

---

1. S.C.Code Ann. § 38–77–160 (Supp.1999).

2. S.C.Code Ann. § 38–77–350(A)(2) (Supp.1999).

(1) the insurer's notification process must be commercially reasonable, whether oral or in writing; (2) the insurer must specify the limits of optional coverage and not merely offer additional coverage in general terms; (3) the insurer must intelligibly advise the insured of the nature of the optional coverage; and (4) the insured must be told optional coverages are available for an additional premium.[3]

If the insurer fails to make a meaningful offer of UIM coverage, the policy is subject to reformation to include UIM coverage up to the insured's liability limits.[4] In this case, Bower argues National General failed to meet the fourth requirement in that it should have explicitly informed his father that optional coverages other than those shown on the form were available. I disagree.

In *Wilkes v. Freeman,*[5] this court further clarified the criteria for a meaningful offer of UIM coverage and held, "An insurer's form offering UIM coverage to a new applicant must contain language describing how the insured may request coverage 'up to' his liability limits, but different from those amounts listed on the insurer's form."[6] In so holding, this court further stated, "[M]erely listing several available options without providing a clear description on how the applicant may request other limits is insufficient to discharge the insurer's duty under section 38–77–160."[7]

Bower submits National General's form is legally deficient because it does not "offer any selection of the optional coverages in a manner consistent with South Carolina law." In support of his position, he cites a sample form developed by the South Carolina Department of Insurance that states, "If there are other limits in which you are interested, but which are not shown upon this form, then fill in those limits."

---

3. *State Farm Mut. Auto. Ins. Co. v. Wannamaker,* 291 S.C. 518, 521, 354 S.E.2d 555, 556 (1987).

4. *Dewart v. State Farm Mut. Auto. Ins. Co.,* 296 S.C. 150, 370 S.E.2d 915 (Ct.App.1988).

5. 334 S.C. 206, 512 S.E.2d 530 (Ct.App.1999).

6. *Id.* at 212, 512 S.E.2d at 533.

7. *Id.* at 211–12, 512 S.E.2d. at·533.

National General's form, however, did not necessarily have to duplicate the sample form approved by the South Carolina Department of Insurance in order to constitute a meaningful offer of UIM coverage. In a 1989 memorandum to all licensed carriers transacting automobile insurance business in South Carolina, the Chief Insurance Commissioner characterized the sample form as a "suggested" form and expressly stated that "any insurance carrier may draft its own version of this form and submit that form to me for my prior approval."

Furthermore, in *Norwood v. Allstate Insurance Company*,[8] this court held an insurer had made a valid offer of UIM coverage because the insured was both advised that she could purchase UIM coverage "up to" her liability limits and instructed on how to increase or decrease this coverage. I see no meaningful factual distinctions between *Norwood* and the present case. The form at issue here advises the insured of "a right to buy underinsured motorist coverage in limits [9] up to the limits of liability you will carry under your automobile insurance policy." In addition, the language in National General's form instructing the insured on how to increase or decrease UIM coverage is almost identical to that appearing on the form in *Norwood*.[10] Contrary to Bower's argument,

---

8. 327 S.C. 503, 489 S.E.2d 661 (Ct.App.1997), *cert. denied* (Feb. 20, 1998).

9. By way of distinction, I note the analogous provision on the form concerning uninsured motorist (UM) coverage provides the insured may increase UM coverage "in various limits" up to the limits of liability coverage.

10. A copy of the written offer of UIM coverage appearing in the record in *Norwood* was made a part of the record in the present case. That offer stated in pertinent part: "In the future, if you wish to ... increase or decrease your limits for underinsured motorist coverage, you then must contact either your insurance agent or your insurance company. You will not be presented with another copy of this Form unless you request it." The written offer in the present case reads in pertinent part: "In the future, if you wish to increase or to decrease your limits of ... underinsured coverage, you must then contact your insurance company. You will not be presented with another copy of this form by your insurance company upon renewal of your automobile liability insurance policy." As the master noted, the only material difference between the form in the present case and that in *Norwood* is that, instead of the check-off blocks that appear in the *Norwood* form, National General's form had blanks for the insured to write in the

then, the absence of an explicit instruction by an insurer that an insured may purchase UIM coverage in limits other than those shown on the form does not give rise to a genuine issue of material fact as to whether the insurer's offer of such coverage is meaningful.[11]

I would affirm.

---

desired limits. I agree with the master that this difference actually makes National General's form more "insured friendly" than that in *Norwood. See Rabb v. Catawba Ins. Co.*, 339 S.C. 228, 528 S.E.2d 693 (Ct.App.2000) (holding a form that presented a number of split limit and single limit UIM coverage amounts and their accompanying premium costs and provided blanks for different coverage amounts and premiums constituted a meaningful offer of UIM coverage).

11. Bower also argues National General's form gives the impression the insured cannot choose any coverage limits other than those appearing on the form. Specifically, he notes the following language on the form: "The limits of underinsured motorist coverage, together with the additional premium you will be charged, are shown upon this Form." Bower also suggests that a letter from National General to the Insurance Commission in which National General admitted it had deleted references to coverage limits available but not shown on the form and had included "all limits available" is evidence that National General deliberately failed to advise his father of the availability of other possible limits of UIM coverage. Although the master referenced these facts in the appealed order, he made no explicit ruling concerning their impact on the overall validity of National General's offer of UIM coverage. *See Noisette v. Ismail*, 304 S.C. 56, 403 S.E.2d 122 (1991) (holding that, when the trial court does not explicitly rule on a question and the appellant fails to move under Rule 59(e), SCRCP, to amend or alter the judgment on that ground, the issue is not properly before the court of appeals and should not be addressed); *Yarborough v. Phoenix Mut. Life Ins. Co.*, 266 S.C. 584, 225 S.E.2d 344 (1976) (stating that, in determining the rights and obligations of the parties to a contract of insurance, the contract must be read and interpreted as a whole).