569 S.E.2d 313

**Jason C. BOWER, Respondent,**

v.

**NATIONAL GENERAL INSURANCE COMPANY, Petitioner.**

No. 25493.

Supreme Court of South Carolina.

Heard Feb. 5, 2002.
Decided July 15, 2002.
Rehearing Denied Sept. 17, 2002.

C. Mitchell Brown and William C. Wood, Jr., both of Nelson Mullins Riley & Scarborough, L.L.P., of Columbia, for petitioner.

Gene M. Connell, Jr., of Kelaher, Connell & Connor, P.C., of Surfside Beach, for respondent.

Justice WALLER.

We granted the petition for a writ of certiorari to review the Court of Appeals' decision in *Bower v. National General Ins. Co.*, 342 S.C. 315, 536 S.E.2d 693 (Ct.App.2000). We affirm.

## FACTS

Respondent Jason Bower was a passenger in his friend's car when the vehicle was involved in an accident. Bower was injured in the accident, and he made an underinsured motorist (UIM) claim as an insured under his father's policy with petitioner National General Insurance Company (National General). National General denied the claim based on the fact that Bower's father had rejected its offer to purchase UIM coverage.

Bower filed this action alleging that National General failed to make a meaningful offer of UIM coverage. Therefore, Bower sought to have the policy reformed to include UIM coverage up to the limits of the insurance policy.[1] On cross-motions for summary judgment, the trial court granted summary judgment in favor of National General. The Court of Appeals reversed and remanded with directions to the trial court to enter summary judgment in favor of Bower and to reform the contract up to the liability limits. *Bower, supra.*

The Court of Appeals found that National General's offer of UIM coverage was not meaningful because the offer did not inform Bower's father of the right to select optional coverages which were not listed on the form. The form stated in pertinent part:

Your automobile insurance policy does not automatically provide any underinsured motorist coverage. You have, however, a right to buy underinsured motorist coverage in

---

1. The policy's liability limits were: $100,000/$300,000/$50,000.

limits **up to the limits** of liability coverage you will carry under your automobile insurance policy. **The limits of underinsured motorist coverage, together with the additional premiums you will be charged, are shown upon this Form.**

. . .

In the future, if you wish to increase or to decrease your limits of additional uninsured or underinsured coverage, you must then contact your insurance company.

(Emphasis added). On the other side of the form, under a separate heading entitled OFFER UNDERINSURED MOTORISTS COVERAGE, the form listed four bodily injury limits with the applicable premium and four property damage limits with the applicable premium.[2] The form then continued as follows:

Do you wish to purchase Underinsured Motorists Coverage? Yes _____ No _____

If your answer is "no" you must then sign here.
_____

If your answer is "yes" then specify the limits which you desire. These limits cannot exceed your automobile insurance liability limits.

select *Under* insured Motorists Bodily Injury limits of:
_____ / _____

select *Under* insured Motorists Property Damage limits of:
_____

Bower's father checked the "No" box declining UIM coverage and signed the form.

The Court of Appeals stated that the language on National General's form could be "fairly construed as an offer to purchase **only** those coverage amounts identified on the form. . . ." *Bower*, 342 S.C. at 319, 536 S.E.2d at 695 (emphasis in original). Because Bower's father was not informed he could choose any amount of UIM coverage, the Court of

---

**2.** The bodily injury limits offered were: 25,000/50,000; 50,000/100,000; 100,000/300,000; and 250,000/500,000. The property damage limits offered were: 10,000; 25,000; 50,000; and 100,000. Given Bower's policy limits of 100,000/300,000/50,000, the form listed three choices each of bodily injury and property damage UIM coverage which were equal to or less than Bower's limits.

Appeals held National General failed to make a meaningful offer.

## ISSUE

■ Did National General make a meaningful offer of UIM coverage?

## DISCUSSION

National General argues that the Court of Appeals erred in finding it did not make a meaningful offer of UIM coverage. Specifically, National General contends that the Court of Appeals failed to apply, or misapplied, the applicable precedents on this issue. We disagree.

■ Under South Carolina law, automobile insurance carriers must offer "at the option of the insured, underinsured motorist coverage up to the limits of the insured liability coverage...." S.C.Code Ann. § 38–77–160 (Supp.2000). In *Garris v. Cincinnati Ins. Co.*, 280 S.C. 149, 311 S.E.2d 723 · (1984), we stated that "underinsured motorist coverage **in any amount** up to the insured's liability coverage must be offered to a policyholder." *Id.* at 154, 311 S.E.2d at 726 (emphasis added).

■ The insurer bears the burden of establishing it made a meaningful offer of UIM coverage. *Butler v. Unisun Ins. Co.*, 323 S.C. 402, 475 S.E.2d 758 (1996). "[A] noncomplying offer has the legal effect of no offer at all." *Hanover Ins. Co. v. Horace Mann Ins. Co.*, 301 S.C. 55, 57, 389 S.E.2d 657, 659 (1990). If an insurer fails to make a meaningful offer, the policy will be reformed by operation of law to include UIM coverage up to the insured's liability limits. *E.g., id.; Butler, supra.*

■ In *State Farm Mut. Auto. Ins. Co. v. Wannamaker*, 291 S.C. 518, 354 S.E.2d 555 (1987), we adopted the following four-prong test by which to determine whether an insurer made a meaningful offer of UIM coverage:

(1) the insurer's notification process must be commercially reasonable, whether oral or in writing;

(2) the insurer must specify the limits of optional coverage and not merely offer additional coverage in general terms;
(3) the insurer must intelligibly advise the insured of the nature of the optional coverage; and
(4) the insured must be told that optional coverages are available for an additional premium.

*Id.* at 521, 354 S.E.2d at 556.

The issue in the instant case involves the fourth prong of the *Wannamaker* test. Bower argued to the Court of Appeals that National General's offer did not inform him of the right to select optional coverages which were **not** listed on its form, and therefore, its offer was not meaningful under *Wannamaker*. The Court of Appeals agreed. National General's primary argument to this Court is that the instant case is indistinguishable from *Norwood v. Allstate Insurance Co.*, 327 S.C. 503, 489 S.E.2d 661 (Ct.App.1997) where the Court of Appeals found the offer of UIM coverage meaningful.

In *Norwood*, Allstate's form listed three choices of UIM coverage up to Norwood's 25,000/50,000/25,000 liability limits.[3] Allstate's form indicated Norwood could purchase UIM coverage "up to" her liability limits. According to the Court of Appeals' opinion, the offer form also "instruct[ed] Norwood how to either increase or decrease her limits of UIM coverage." *Id.* at 506, 489 S.E.2d at 663. Based on these considerations, the Court of Appeals concluded that Norwood "had the ability ... to select varying amounts of UIM coverage up to the liability limits of her policy." *Id.*

National General contends that *Norwood* established a three-part test for the fourth prong of the *Wannamaker* test. According to National General, if a form offers at least three choices of UIM coverage, specifies that the applicant can

---

**3.** The parties have made the Allstate form from the *Norwood* case a part of the record in this case. Allstate's form listed a total of six options for limits up to 250,000/500,000/50,000, three of which went up to Norwood's limits. In this case, National General's form listed four limits, three of which went up to Bower's liability limits. Therefore, just as in *Norwood,* there were three **available** limits from which Bower could choose UIM coverage. However, because National General separated the bodily injury limits from the property damage limits and there were three choices for each, technically there were up to nine combinations for UIM coverage listed upon the form.

purchase UIM coverage "up to" the liability limits, and instructs the applicant how to increase or decrease UIM coverage, then the offer is meaningful as a matter of law.

We disagree that any such "test" was created by the Court of Appeals. However, National General is correct in that the *Norwood* court held Allstate's offer meaningful based primarily on these three **factual** considerations, and that the same facts are present in the instant case. We nonetheless agree with the Court of Appeals that *Norwood* is distinguishable from this case.

National General's form contained the following language that the form in *Norwood* did not:

**The limits** of underinsured motorist coverage, together with the additional premiums you will be charged, **are shown upon this Form.**

(Emphasis added). The Court of Appeals found this language indicated to the insured that the only options available were the UIM coverages listed on the form. Specifically, the Court of Appeals found that this language was similar to that used by the insurer in *Wilkes v. Freeman,* 334 S.C. 206, 512 S.E.2d 530 (Ct.App.1999). In *Wilkes,* the insurer's UIM explanation form stated that:

**All of the limits** of underinsured motor vehicle coverage we sell, together with the additional premiums you will be charged, **are shown on this form.**

334 S.C. at 210, 512 S.E.2d at 532 (emphasis added). The Court of Appeals held that despite the fact that the offer form showed three limits equal to or less than Wilkes's liability coverage, the form failed to provide any indication that the applicant may request other coverage amounts. *Id.* Significantly, the Court of Appeals stated that "merely listing several available options without providing a clear description on how the applicant may request other limits is insufficient to discharge the insurer's duty under section 38–77–160." *Id.* at 211–12, 512 S.E.2d at 533.

We agree that *Wilkes* is factually analogous to the instant case. While the language on National General's form did not state outright that "all" available limits are listed, as the form in *Wilkes* did, a common-sense reading of this language would lead a reasonable person to that conclusion.

In other words, because of this language, National General's form fails to inform an insured that "underinsured motorist coverage **in any amount** up to the insured's liability coverage" is what is actually being offered. *Garris v. Cincinnati Ins. Co.*, 280 S.C. at 154, 311 S.E.2d at 726 (emphasis added).[4]

Accordingly, we hold that National General's offer cannot be considered meaningful since it did not inform Bower that **any** limits up to the liability limits could be purchased. As the Court of Appeals observed: "Had National General intended the listed coverages to be **mere examples** of available coverages or the most common coverages chosen, it certainly could have said so." *Bower*, 342 S.C. at 319, 536 S.E.2d at 695 (emphasis added).

Indeed, we note that the South Carolina Department of Insurance (DOI) has issued a sample offer form which clearly communicates this idea. The form includes the following language:

> Your automobile insurance policy does not automatically provide any underinsured motorist coverage. You have, however, a right to buy underinsured motorist coverage in limits up to the limits of liability coverage you will carry

---

4. The dissent suggests that had Bower been "interested" in purchasing UIM coverage, he simply could have filled in any amount desired in the blank spaces provided by the National General offer form. The dissent, however, appears to shift the inquiry to the insured's subjective intent regarding UIM coverage, when the appropriate inquiry rests on the offer made by the insurer. *See Butler, supra* (the insurer bears the burden of establishing it made a meaningful offer of UIM coverage); *Wannamaker*, 291 S.C. at 521, 354 S.E.2d at 556 ("the burden is on the insurer to **effectively** transmit the offer to the insured") (emphasis added). Moreover, we held in *Wannamaker* that the statute governing the offer of UIM coverage "mandates the insured to be provided **with adequate information, and in such a manner, as to allow the insured to make an intelligent decision** of whether to accept or reject the coverage." *Id.* (emphasis added). Here, National General's offer of UIM coverage was made in such a manner as to convey that the only available limits were the ones shown upon the offer form. The offer therefore failed to provide Bower with the information needed "to make an intelligent decision of whether to accept or reject the coverage." *Id.* While we agree with the dissent that an insured must "exercise common sense," we certainly cannot expect an insured to act intelligently when, as a matter of law, an offer has not been meaningfully conveyed. *See Hanover Ins. Co. v. Horace Mann Ins. Co.*, 301 S.C. at 57, 389 S.E.2d at 659 ("a noncomplying offer has the legal effect of no offer at all").

under you automobile insurance policy. **Some of the more commonly sold limits of underinsured motorist coverage, together with the additional premiums you will be charged, are shown upon this Form. If there are other limits in which you are interested, but which are not shown upon this Form, then fill in those limits.** If your insurance company is allowed to market those limits within this State, your insurance agent will fill in the amount of increased premium.

(Emphasis added). This language would effectively communicate to an insured that there are available limits of UIM coverage other than those limits listed on the form. We strongly encourage insurers to include such language on their offer forms. While the DOI's exact language need not be provided, we believe that this or similar language certainly would make the offer of UIM coverage in any amount up to the liability limits truly meaningful to the insured.[5]

## CONCLUSION

We hold the Court of Appeals correctly reversed summary judgment for National General and ordered that judgment be entered for Bower and the policy be reformed up to the liability limits. Accordingly, the decision of the Court of Appeals is

**AFFIRMED.**

MOORE and PLEICONES, JJ., concur. TOAL, C.J., dissenting in a separate opinion in which BURNETT, J., concurs.

Chief Justice TOAL.

I respectfully dissent. In my opinion, National General made a meaningful offer of UIM to Bower. Therefore, I would reverse the Court of Appeals decision and decline to reform Bower's policy up to the liability limits.

---

**5.** Both this Court and the Court of Appeals have, in previous cases, quoted with approval this language from the DOI's form. *See Butler v. Unisun Ins. Co.*, 323 S.C. 402, 475 S.E.2d 758 (1996); *Rabb v. Catawba Ins. Co.*, 339 S.C. 228, 528 S.E.2d 693 (Ct.App.2000); *Osborne v. Allstate Ins. Co.*, 319 S.C. 479, 462 S.E.2d 291 (Ct.App.1995), *aff'd*, Op. No. 96–MO–00222 (S.C. Sup.Ct. filed Oct. 9, 1996).

In *Wannamaker*, this Court expressly adopted the four-part test developed by the Supreme Court of Minnesota discussed by the majority. The fourth prong of that test at issue here mandates that "the insured must be told that optional coverages are available for an additional premium." *Wannamaker*, 291 S.C. at 521, 354 S.E.2d at 556 (citing) *Hastings v. United Pacific Ins. Co.*, 318 N.W.2d 849 (Minn.1982). In the present case, National General's policy stated, "[y]ou have . . . a right to buy underinsured motorist coverage in limits up to the limits of liability coverage you will carry under your automobile insurance policy." In addition, the policy listed at least 4 choices of coverage for underinsured coverage, 3 of which went up to the limits of Bower's coverage.

Moreover, the policy provided a blank space for the insured "to specify the limits you desire."

Although this language is very similar to the offer of UIM approved in *Norwood*, the majority distinguishes Bower's policy from the *Norwood* policy based on the statement in Bower's policy that "[t]he limits of [UIM] coverage, together with the additional premiums you will be charged, *are shown upon this Form*." (Emphasis added). I concede the language would be clearer if, instead, the policy stated explicitly that the insured could purchase UIM coverage *in any amount* up to the insured's limits, *including amounts not shown on the form*. However, we have not mandated that insurers are required to use the exact language recommended by the Department of Insurance and quoted by the majority in order to make an offer of UIM meaningful. I disagree that the language in the policy at issue would lead a reasonable person to believe that coverage could only be purchased in the amounts shown, and would find it represents a meaningful offer of UIM under *Wannamaker*.

The majority correctly points out that the insurer bears the burden of establishing it made a meaningful offer of UIM. At issue in this case is whether the insured was told optional coverages were available for an additional premium. *Wannamaker*. As discussed in the majority opinion, National General listed up to nine combinations of available UIM coverage on its form, and left a blank space for the insured "to specify the limits you desire" on the form. I simply do not agree with the

majority that this offer was not meaningful under the objective, reasonable person standard set out in *Wannamaker*.[6]

In my opinion, National General did make a meaningful offer of UIM coverage to Bower, but Bower chose not to purchase UIM and knowingly rejected National General's meaningful offer for it. Therefore, reforming his policy to provide it would result in a windfall for Bower. Accordingly, I would deny coverage and **REVERSE**.

BURNETT, J., concurs.

---

**6.** The language is not analogous to the policy language in *Wilkes v. Freeman*, as the majority argues it is. The *Wilkes* policy stated, *"All* of the limits of underinsured motorist coverage we sell, together with the additional premiums you will be charged, *are shown on this form."* *Wilkes*, 334 S.C. at 208, 512 S.E.2d at 531. (Emphasis added). Bower's policy did not state "all" the limits of UIM "we sell" are listed on this form, and it provided a blank space for Bower "to specify the limits you desire." The statement in *Wilkes* is much more definitive than the one in Bower's policy, especially considering the blank space provided for Bower to specify the coverage he desired. If Bower was interested in purchasing different coverage amounts of UIM, he could have written in the amount desired in the blank space provided in his policy. Although the insurer bears the burden of establishing it made a meaningful offer, I do not believe making a meaningful offer obviates the need for the insured to exercise common sense.