23467

Ronnie TODD, Appellant-Respondent v. FEDERATED MUTUAL INSUR-
ANCE COMPANY and South Carolina Farm Bureau Mutual Insurance
Company, Defendants, of whom Federated Mutual Insurance Company
is Respondent-Appellant.

(409 S.E. (2d) 361)

Supreme Court

*Flo S. Lester, John S. Wilkerson, III* and *Hugh M. Claytor,* all of *Turner, Padget, Graham & Laney, P.A.,* Florence, *for appellant-respondent.*

*Michael M. Nunn* and *J. Boone Aiken, III,* both of *Coleman, Aiken & Chase, P.A.,* Florence, *for respondent-appellant.*

Heard May 20, 1991.

Decided Sept. 9, 1991.

HARWELL, Justice:

Appellant Ronnie Todd commenced this declaratory judgment action against respondent Federated Mutual Insurance Company (Federated) to determine the amount of uninsured motorist coverage available under two insurance policies, a business automobile insurance policy (hereinafter "primary policy"), and a commercial umbrella liability policy (hereinafter "umbrella policy"). The issues on appeal are whether

the trial judge erred in reforming the primary policy to include uninsured motorist coverage up to the amount of liability coverage, and whether the trial judge erred in holding that the umbrella policy need not provide uninsured motorist coverage. We affirm.

## I. FACTS

On September 5, 1987, Todd was riding in a motorhome owned by C.G. Bass. An uninsured driver crossed the center line and hit the motorhome head-on, killing eight of the eleven occupants. It is uncontroverted that the operator of the other vehicle was responsible for the accident, that this vehicle was an uninsured motor vehicle under South Carolina law, and that the aggregate damages sustained by Todd and the other occupants exceed the total of all available coverages. It is also undisputed that the primary policy provided insurance coverage for Todd, as the motorhome was a covered vehicle under the primary policy.

Bass first purchased insurance coverage from Federated in October, 1985. At the time of the original insurance purchase, the primary policy provided liability coverage in the amount of $300,000 and uninsured motorist coverage with limits equal to the liability coverage, and the umbrella policy provided liability coverage in the amount of $4,000,000. On October 22, 1986 the primary policy and the umbrella policy were renewed by Federated. Upon renewal, the liability limits of the primary policy were increased to $500,000, and the umbrella policy limits were decreased to $3,000,000.[1] The uninsured motorist coverage remained at $300,000. These policies were in full force and effect at the time of the accident.

Todd instituted this declaratory judgment action seeking to reform the primary policy to provide uninsured motorist coverage in an amount equal to the liability limits of the primary policy, and seeking to reform the umbrella policy to include uninsured motorist coverage in an amount equal to the liability limits of that policy. Both parties filed motions for summary judgment. After hearing the motions, the trial judge held that Federated had not made an effective offer to in-

---

[1] These changes were due to an underwriting requirement of Federated and were not made at the request or option of the insured.

crease the uninsured motorist coverage up to the limits of the insured's liability coverage under the primary policy as required by S.C. Code Ann. § 38-77-160 (1989). As a result, the trial judge reformed the primary policy to provide $500,000 in uninsured motorist coverage. Federated appeals from this ruling of the trial judge. The trial judge also held that Federated' s umbrella policy need not provide uninsured motorist coverage. Therefore, the trial judge refused to reform the umbrella policy to include uninsured motorist coverage. Todd appeals from this portion of the trial judge's order.

## II. DISCUSSION

### A. FEDERATED'S APPEAL

Federated contends that the trial judge erred in reforming the primary policy to include uninsured motorist coverage up to the amount of liability coverage. As noted above, the primary policy initially provided liability coverage and uninsured motorist coverage in the amount of $300,000. When the primary policy was renewed in 1986, the liability limits of the primary policy were increased to $500,000 due to Federated's underwriting requirements. However, the uninsured motorist coverage remained at $300,000. At trial, Todd maintained that when the policy was renewed, Federated did not make an effective offer to increase the uninsured motorist coverage up to the limits of the insured's liability coverage under the primary policy. The trial judge agreed and reformed the primary policy to provide $500,000 in uninsured motorist coverage.

Section 38-77-160 provides that "[a]utomobile insurance carriers shall offer, at the option of the insured, uninsured motorist coverage up to the limits of the insured's liability coverage. . . ." Not only must the insurer offer uninsured motorist coverage in any amount up to the liability limits, but the offer must be an effective offer that is meaningful to the insured. *Dewart v. State Farm Mut. Auto. Ins. Co.,* 296 S.C. 150, 370 S.E. (2d) 915 (Ct. App. 1988). The insurer has the burden of proving that it made a meaningful offer of optional coverage to the insured. *Id.*

In *State Farm Mut. Auto. Ins. Co. v. Wannamaker,* 291 S.C. 518, 354 S.E. (2d) 555 (1987), we adopted a four part test to determine whether an insurer has

complied with its duty to offer optional coverages: (1) the insurer's notification process must be commercially reasonable, whether oral or in writing; (2) the insurer must specify the limits of optional coverage and not merely offer additional coverage in general terms; (3) the insurer must intelligibly advise the insured of the nature of the optional coverage; and (4) the insured must be told that optional coverages are available for an additional premium. We have also held that these criteria must be met at the time of policy renewal where the terms of the policy are changed upon renewal. *Webb. v. Nationwide Mut. Ins. Co.*, 407 S.E. (2d) 635 (S.C. 1991).

Federated concedes that it did not make a written offer of uninsured motorist coverage to Bass. Instead, Federated claims that its agent, Leonce Wimberly, discussed the renewal with Bass and orally made an effective offer of uninsured motorist coverage to him. In support of its contention, Federated introduced into evidence a document entitled "Policyholder Security Survey Summary," which was signed by Bass and Wimberly, and which indicated that liability coverage was to be provided in the amount of $500,000, and that uninsured motorist coverage was to be provided in the amount of $300,000. Wimberly testified that although the document reflected that he had presented Bass with the option of purchasing uninsured motorist coverage in an amount equal to the liability limits, he could not remember whether he had actually discussed this option with Bass.

Since Bass was killed in the accident, Wimberly's testimony is the only evidence available regarding whether an effective offer of uninsured motorist coverage was made. Wimberly repeatedly testified that he could not remember whether he offered Bass the option of purchasing the additional uninsured motorist coverage. Consequently, we find that the evidence supports the trial judge's conclusion that Federated has failed to meet its burden of proving that it made a meaningful offer of uninsured motorist coverage to the insured. Under *Wannamaker*, when an insurer fails to make a meaningful offer of optional insurance coverage, the insured is entitled to such optional coverage in an amount equal to the liability limits. Accordingly, the trial judge did not err in reforming the primary policy to provide $500,000 of uninsured motorist coverage.

## B. TODD'S APPEAL

Todd argues that the trial judge erred in refusing to reform the umbrella policy to include uninsured motorist coverage. Todd contends that our uninsured motorist statutes mandate that all automobile insurance policies, including umbrella policies, must provide uninsured motorist coverage.[2] Federated admits that it did not offer Bass uninsured motorist coverage in conjunction with the umbrella policy and that it did not have such coverage available in South Carolina. Federated contends that an umbrella policy is not the type of policy intended to be covered by our uninsured motorist statutes.

The issue of whether an umbrella policy is subject to the provisions of our uninsured motorist statutes is a question of first impression in this State. However, our decision on this point will be of limited utility because the legislature enacted a provision, effective July 1, 1989, which states that "[n]o uninsured or underinsured motorist coverage need be provided in this State by any excess or umbrella policy of insurance." S.C. Code Ann. § 38-77-161 (Supp. 1990). Thus, our decision in this case addresses whether, prior to the enactment of Section 38-77-161, an umbrella policy was required to provide uninsured motorist coverage.

Both parties argue that the legislature's intent, as to whether prior law required umbrella policies to provide uninsured motorist coverage, can be gleaned from the enactment of Section 38-77-161. Todd argues that it must be presumed that the legislature did not intend to work a nullity by enacting this provision and that the only reasonable conclusion is that South Carolina law required umbrella policies to provide uninsured motorist coverage prior to the effective date of Section 38-77-161. Federated, on the other hand, submits that the statutory amendment simply clarified the existing law. However, there is no legislative history or any other indication that in enacting Section 38-77-161, the legislature intended to either nullify or clarify prior law on this issue. Consequently,

---

[2] S.C. Code Ann. § 38-77-150 (1989), provides that all automobile insurance policies must provide uninsured motorist coverage, and S.C. Code Ann. § 38-77-160 (1989), provides that the insurer is required to offer uninsured motorist coverage up to the liability limits of the automobile policy. However, neither of these statutes specifically includes or excludes umbrella policies as a type of policy which must provide uninsured motorist coverage.

we do not find these arguments to be dispositive of this question. Instead, we find that this issue must be determined by examining the purpose of our uninsured motorist statutes and by analyzing whether this purpose is furthered by mandating that umbrella policies are within the purview of these statutes. After careful consideration, we conclude that the legislature did not intend that umbrella policies would be subject to the uninsured motorist statutes.

The purpose of the uninsured motorist statutes is to protect an insured who is injured by an uninsured motorist by ensuring that the insured will be able to recover at least an amount equivalent to what would have been available if the insured had been injured by a driver who maintained the minimum statutory coverage.[3] This purpose is achieved by requiring that primary policies provide uninsured motorist coverage.

The view that uninsured motorist statutes are inapplicable to umbrella policies is supported by numerous jurisdictions. These cases focus on the fact that an umbrella policy is fundamentally different from a primary liability policy:

> Automobile liability policies and motor vehicle liability policies insure against the risk of loss through the operation of specific automobiles. An umbrella policy, on the other hand, is fundamentally excess insurance designed to protect against catastrophic loss. Before an umbrella policy is issued, a primary policy (the "underlying policy") must be in existence and this primary policy must by law provide uninsured motorist coverage. The umbrella policy assumes a risk of much less frequent occurrence, i.e., the risk of judgments in excess of primary policy limits, and accordingly carries premiums which reflect the lesser magnitude of this risk.

*Trinity Universal Ins. Co. v. Metzger,* 360 So. (2d) 960, 962 (Ala. 1978); *see also Moser v. Liberty Mut. Ins. Co.,* 731 P. (2d) 406 (Okl. 1986); *Hartbarger v. Country Mut. Ins. Co.,* 107 Ill.

---

[3] The insured may be able to recover more if he has purchased uninsured motorist coverage in an amount greater than the basic limits, or if the insured is entitled to stack uninsured motorist coverage from other vehicles.

App. (3d) 391, 63 Ill. Dec. 42, 437 N.E. (2d) 691 (1982); *Continental Ins. Co. v. Howe*, 488 So. (2d) 917 (Fla. DCA (3d) 1986).

As these courts have noted, an umbrella policy is designed as supplementary insurance and would not exist but for the underlying primary policy. The underlying primary policy provides the insured with all the benefits accorded under our uninsured motorist statutes. Consequently, we hold that prior to the effective date of Section 38-77-161, umbrella policies were not required to provide uninsured motorist coverage. Accordingly, the trial judge did not err in refusing to reform the umbrella policy to include uninsured motorist coverage. The order of the trial judge is

Affirmed.

GREGORY, C.J., and FINNEY and TOAL, JJ., concur.

JOHN P. GARDNER, Acting Associate Justice, concurs.