1915

AMERICAN SECURITY INSURANCE COMPANY, Appellant v. Archie O. HOWARD, Appellant, and South Carolina Insurance Company, Respondent.

(431 S.E. (2d) 604)

Court of Appeals

48

*John R. Devlin, Jr.*, of *Love, Thornton, Arnold & Thomason, Robert P. Foster*, of *Foster, Foster & Fortson*, Greenville and *William T. Jones, III*, of *The Jones Law Firm*, Greenwood, *for appellants.*

*N. Heyward Clarkson* and *T. David Rheney*, both of *Gibbes & Clarkson*, Greenville, *for respondent.*

Heard April 12, 1993.

Decided May 10, 1993.

## ORDER

After careful consideration of the arguments presented by the parties on rehearing, it is ordered that the opinion heretofore filed be withdrawn and the attached opinion be substituted.

BELL, Judge:

American Security Insurance Company brought this declaratory judgment action against South Carolina Insurance Company and Archie O. Howard. The case arises out of an accident in which Howard, through no fault of his own, was injured while driving his Honda motorcycle. The insurance carrier for the at-fault driver paid Howard its liability limit of $15,000. American provided underinsured motorist coverage on Howard's motorcycle. It also carried excess underinsured motorist coverage under another policy issued to Howard. It paid Howard the $15,000 limit of underinsured motorist coverage under its primary policy. It then sought a declaration as to the availability of underinsured motorist coverage to Howard under a policy issued to his wife, Frances Howard, by South Carolina Insurance Company.[1] American also asked the court to apply the "other insurance" clause of its primary policy to apportion underinsured coverage between it and Car-

---

[1] Howard was an insured under his wife's policy, which covered three automobiles.

olina and to declare the pro rata amounts of Howard's damages for which it and Carolina were responsible. Howard cross-claimed against Carolina seeking to reform its policy to include underinsured motorist coverage up to the liability limits of the policy and to stack basic limits underinsured motorist coverage for each of the three automobiles covered by the policy. Howard also sought to reform the Carolina policy to include so-called Personal Injury Protection (PIP) coverage up to the $5000 amount required to be offered by law and to recover that sum in addition to his other coverages. On cross motions for summary judgment, the court denied the motions of Howard and granted the motion of Carolina. The court held that Carolina's policy did not afford underinsured motorist or PIP coverage. Howard and American appeal. We affirm in part, reverse in part and remand.

## I.

Carolina asserts its policy provides no underinsured motorist coverage, because the named insured, Frances Howard, rejected the coverage when it was offered to her. Her husband claims the company did not make a meaningful offer as required by law, so the policy should be reformed to include the coverage.

South Carolina law requires automobile insurance carriers to offer their insureds optional underinsured motorist coverage up to the limits of their insured liability coverage. *See* S.C. Code Ann. § 38-77-160 (1989 & Supp. 1992). In order to comply with the statutory mandate, the offer must satisfy four criteria: (1) the insurer must give notification of the offer in a commercially reasonable manner; (2) the insurer must specify the limits of optional coverage and not merely offer additional coverage in general terms; (3) the insurer must tell the insured the optional coverage is available for an additional stated premium; and (4) the insurer must give an intelligible explanation of underinsured motorist coverage in a manner that permits the insured to make an informed decision to accept or reject the coverage. This means the necessary information must be conveyed in a format and in language that make it readily understandable to a person of common intelligence. *State Farm Mutual Automobile Insurance Co. v. Wannamaker*, 291 S.C. 518, 354 S.E. (2d) 555 (1987); *Dewart v.*

*State Farm Mutual Automobile Insurance Co.*, 296 S.C. 150, 370 S.E. (2d) 915 (Ct. App. 1988). If the insurer fails to make a meaningful offer of underinsured motorist coverage, the court will reform the automobile insurance policy to afford coverage up to the limits of the insured's liability coverage. *Id.*

The facts material to whether Carolina made an offer that complies with the statute are not in dispute. Carolina relies on an undated, standard form offer signed by Frances Howard to show that it offered and she rejected underinsured motorist coverage. However, the form was legally defective in several respects.

First, the offer automatically "rolled on" underinsured motorist coverage with mandatory liability coverage. It then gave the insured the right to reject the coverage and receive a partial refund of the premium. This method of offering is an illegal "negative sale" in violation of the statute. *See* S.C. Insurance Dept. Bulletin No. 88-2 (March 24, 1988).

Second, the "rolled on" coverage was only for an amount equal to the liability coverage. The statute requires optional coverage to be offered in any amount up to the limits of liability coverage. *Hanover Insurance Co. v. Horace Mann Insurance Co.*, 301 S.C. 55, 389 S.E. (2d) 657 (1990). Because it did not give the insured a choice of optional coverage limits, the form failed to make an effective offer. *Id.*

Third, the form offered underinsured motorist coverage without specifically stating the limits of the coverage. To be effective, the offer must specify the limits of the additional coverage in dollar amounts. If it fails to do so, it does not constitute a meaningful offer. *Jackson v. State Farm Mutual Automobile Insurance Co.*, 301 S.C. 440, 392 S.E. (2d) 472 (Ct. App. 1990), *aff'd as modified,* 303 S.C. 321, 400 S.E. (2d) 492 (1991).

Fourth, the form does not provide the insured with a separately stated premium amount for coverage at the specified limits. This omission likewise renders the offer ineffective. *See id.; Dewart v. State Farm Mutual Automobile Insurance Co., supra.*

Finally, the form fails to explain the nature of underinsured motorist coverage and how it differs from other coverages. It omits any description that would allow

the insured to make an informed decision to accept or reject the coverage. This omission also violates the statute. *Id.*

Carolina contends these deficiencies do not matter in this case, because Mrs. Howard had consistently rejected underinsured motorist coverage in the past, indicating she was only interested in purchasing mandatory liability coverage at the lowest premium cost and would have rejected the optional coverage even if the required information had been included in the offer. However, our Supreme Court has held that even if the insured expressly refuses the optional coverage, a noncomplying offer has the legal effect of no offer at all. *Hanover Insurance Co. v. Horace Mann Insurance Co., supra.* Thus, we are compelled to hold that Carolina did not make a meaningful offer as required by the statute. Its failure to comply with the law entitles Howard to reformation of the policy to include underinsured motorist coverage.

## II.

The circuit court concluded that even if Carolina's policy must be reformed to include underinsured motorist coverage, Howard was still not entitled to recover, because (1) he was driving a motorcycle, not an automobile, at the time of the accident; and (2) the motorcycle was owned by him and came within an "owned vehicle" exclusion in the policy. The court also erred in these rulings.

Carolina's policy contains no language restricting underinsured motorist coverage to use of an automobile. The court simply read into the policy a restriction it did not contain. This was reversible error.

Carolina's policy does contain an exclusion stating the carrier does not provide underinsured motorist coverage to a person occupying a motor vehicle owned by the named insured or any family member which is not insured under the policy. The circuit court held this exclusion precluded Howard from recovering because he owned the motorcycle involved and it was not a vehicle listed in the policy. In *Bratcher v. National Grange Mutual Insurance Co.*, 292 S.C. 330, 356 S.E. (2d) 151 (Ct. App. 1987), we held a similar "owned vehicle" exclusion invalid. Likewise, in *McAlister v. State Farm Mutual Automobile Insurance Co.*, 301 S.C. 113, 390 S.E. (2d) 383 (Ct. App. 1990), we held that an insured was

entitled to recover underinsured motorist benefits for injuries sustained while he was driving an owned vehicle not described in the policy declarations. We noted that the Supreme Court, in construing Code § 56-9-831[2] as it pertains to underinsured motorist coverage, has stated that underinsured motorist coverage is nowhere limited to the use of th the insured vehicle, and cannot be so limited by the policy provisions. *See Nationwide Mutual Insurance Co. v. Howard*, 288 S.C. 5, 339 S.E. (2d) 501 (1985). Accordingly, the circuit court erred in giving effect to the exclusion in this case.

### III.

Howard next argues the Carolina policy should be reformed to include medical, hospital, disability, and loss of income coverage up to $5000, because Carolina did not make a meaningful offer of these coverages as required by S.C. Code Ann. § 38-77-250 (1987).[3] These coverages are commonly known as Personal Injury Protection.

Insurers have the right to limit their liability provided they do not contravene a statutory provision or public policy. *Burns v. State Farm Mutual Automobile Insurance Co.*, 297 S.C. 520, 377 S.E. (2d) 569 (1989). Carolina's policy specifically excludes PIP coverage for injuries "[s]ustained by any person arising out of the ownership, maintenance or use of a motorcycle." S.C. Code Ann. § 38-77-310 (1976) (repealed 1989) allows an insurer to exclude PIP coverage for injuries incurred from the use of a motorcycle. *Id.* Therefore, we affirm the circuit court's order denying reformation of the Carolina policy to provide Howard PIP coverage.

### IV.

Finally, Howard claims that once Carolina's policy is reformed to include underinsured motorist coverage, he should be permitted to stack coverages for the three vehicles insured by the policy. The circuit court did not reach this issue because it erroneously determined that no underinsured motorist coverage was available under the policy. How-

---

[2] Now codified as S.C. Code Ann. § 38-77-160 (1991).
[3] The legislature repealed Section 38-77-250 in 1989, after Howard's accident.

ever, Howard preserved the issue for appeal by moving to amend the judgment pursuant to Rule 59(e), SCRCP. Additionally, because the issue will arise again on remand, we address it for the guidance of the circuit court.

Carolina contends that Howard should not be allowed to stack in this case, because neither of the vehicles involved in the accident was one of Mrs. Howard's vehicles insured through the Carolina policy. Had Mrs. Howard purchased underinsured motorist coverage, she would have paid a premium only for the vehicles named in the policy. She would not have paid a premium for the motorcycle Howard was driving. Therefore, Carolina argues that permitting Howard to stack coverages for the three automobiles covered by the policy would require Carolina to cover a risk it did not insure and for which it received no premium. No appellate court has decided the precise stacking question at issue in this case. This case differs from others decided in the South Carolina courts in that Howard seeks to stack coverage under his wife's policies even though no vehicle owned by his wife was involved in the accident.

The statute states in pertinent part:

> If, however, an insured or named insured is protected by uninsured or underinsured motorist coverage in excess of the basic limits, the policy shall provide that the insured or named insured is protected only to the extent of the coverage he has on the vehicle involved in the accident. If none of the insured's or named insured's vehicles is involved in the accident, coverage is available only to the extent of coverage on any one of the vehicles with the excess or underinsured coverage.

S.C. Code Ann. § 38-77-160 (1989). The Supreme Court's interpretation of this statute in *Fireman's Insurance Co. v. State Farm Mutual Automobile Insurance Co.*, 295 S.C. 538, 370 S.E. (2d) 85 (1988), suggests that Howard should be entitled to stack his wife's underinsured coverage. In *Fireman's*, Glenn Mullins and Joan Locklear were injured when the car they were traveling in collided with another car. Locklear owned the car, but Mullins was driving. Mullins, who was not married to Locklear and who did not own a vehicle involved in the accident, sought to stack uninsured motorist coverage

under his automobile liability coverage. The trial court allowed him to stack his policies.

On appeal, the Supreme Court reversed. The Court stated the statute allowed only Class I insureds to stack coverage. It defined Class I insureds as an insured or named insured who has a vehicle involved in an accident. It held Mullins was not a Class I insured, because he did not own a vehicle involved in the accident.[4]

The critical enquiry that determines Howard's right to stack underinsured coverage is whether he is a Class I insured. *See National General Insurance Co. v. Pena,* — S.C. —, 419 S.E. (2d) 375 (Ct. App. 1992), *cert. denied,* (S.C. Sup. Ct. filed Oct. 15, 1992) (Davis Adv. Sh. No. 23). An insured includes, among others, the named insured's spouse if they reside together. *See* S.C. Code Ann. § 38-77-30(6) (1989). Howard, as Mrs. Howard's spouse who resides with her in the same household, is an insured under Mrs. Howard's Carolina policy. A Class I insured is an insured or named insured who has a vehicle involved in the accident. *South Carolina Farm Bureau Mutual Insurance Co. v. Mooneyham,* 304 S.C. 442, 405 S.E. (2d) 396 (1991). Under this broad definition, Howard is a Class I insured under his wife's policy. The Supreme Court may not have intended Class I insureds to include persons such as Howard when it created the Class I and Class II distinction. Nevertheless, because Howard literally falls within the Class I definition, we are compelled to hold he is entitled to stack coverages for the three vehicles insured under his wife's Carolina policy.

For the reasons stated, we reverse the judgment and remand to the circuit court. The court shall reform the Carolina policy to include underinsured motorist coverage up to the

---

[4] In dictum in *Fireman's,* the Court reaffirmed its holding in *Nationwide Mutual Insurance Co. v. Howard,* 288 S.C. 5, 339 S.E. (2d) 501 (1985). In *Nationwide,* the vehicle involved in the accident was covered by a policy with Northland Insurance Company. The named insured owned six other vehicles covered by policies with Nationwide Insurance Company. The Court permitted stacking of the Nationwide policies, although Nationwide had not written coverage on the vehicle involved in the accident. The Court in *Fireman's* stated it allowed stacking in *Nationwide,* because the insured was a named insured who had a vehicle involved in the accident—a Class I insured. In effect, the Court's ruling required Nationwide to cover a risk it did not insure (*i.e.* its named insured being injured in a vehicle insured under another company's policy) and for which it received no premium.

limits of basic liability coverage on that policy. It shall also stack the underinsured motorist coverage for the three vehicles insured by Mrs. Howard's policy. The court shall then determine the total amount of Howard's damages for personal injury and apply the underinsured motorist coverage to indemnify Howard for those damages to the extent they are not covered by the at-fault driver's liability insurance. If the sum of all applicable coverages under the American and Carolina policies exceeds Howard's actual damages, the court shall apportion the applicable coverages pro rata between American and Carolina in accordance with the "other insurance" clause in the American policy.

Affirmed in part, reversed in part and remanded.

GARDNER and SHAW, JJ., concur.