544 S.E.2d 637

**HORRY COUNTY, Respondent,**

v.

**The INSURANCE RESERVE FUND, a division of the South Carolina Budget and Control Board, an agency of the State of South Carolina, Appellant.**

No. 3301.

Court of Appeals of South Carolina.

Heard Jan. 11, 2001.
Decided Feb. 20, 2001.
Rehearing Denied April 23, 2001.

---

494

Charles E. Carpenter, Jr., and S. Elizabeth Brosnan, both of Richardson, Plowden, Carpenter & Robinson, of Columbia, for appellant.

G. Michael Smith, Phil Thompson and M. Mark McAdam, all of The Thompson Law Firm, of Conway, for respondent.

CURETON, Judge.

In this declaratory judgment action, the special referee found the Insurance Reserve Fund (the Fund) was contractually obligated, under the terms of a Tort Liability Insurance Policy, to indemnify Horry County for damage caused to neighboring property by a county-operated coquina mine.[1] The Fund appeals. We affirm.

## FACTS/PROCEDURAL BACKGROUND

From 1984 until 1991, Horry County operated a coquina mine near Loris, South Carolina. In the course of operating the mine, the County continually pumped water from the mine pits. Otis Johnson, the owner of neighboring property, no-

---

1. Coquina is "a soft whitish limestone formed of broken shells and corals cemented together and used for building." *Merriam Webster's Collegiate Dictionary* 256 (10th ed.1993).

ticed problems on his property resulting from the operation of the mine. In 1989 the level of his irrigation pond dropped approximately ten feet. In 1991 Johnson discovered a 12-by 12-foot sink hole, open to a depth of five to six feet, in his field. Johnson alleged the water created further sink and chimney holes on his property, rendering his house uninhabitable. Johnson filed suit against Horry County alleging an inverse condemnation of his property. A jury awarded Johnson $300,000.

In 1994, neighboring property owners, Betty Johnson and Velma and Jerry Strickland also filed claims against the County alleging inverse condemnation. Betty Johnson alleged the County's operation of the mine caused sink and chimney holes on her property. Betty Johnson also alleged the operation of the mine caused cracks in the foundation of her house. The Stricklands alleged operation of the mine caused flooding on twenty acres of their property, resulting in severely damaged vegetation and timber. The County settled with Betty Johnson for $75,000 and with the Stricklands for $50,000.

Relying on the insurance policy, the County filed this declaratory judgment action seeking an order requiring the Fund to indemnify it for the judgment and settlement amounts plus attorney fees and interest. By consent, the parties referred the matter to a special referee with finality. The referee concluded the policy provided coverage and ordered the Fund to indemnify the County.

## STANDARD OF REVIEW

The standard of review in a declaratory judgment action is determined by the underlying issue or issues. *Felts v. Richland County,* 303 S.C. 354, 400 S.E.2d 781 (1991). The underlying issue in this action is the determination of coverage under an insurance policy. An action to ascertain whether coverage exists under an insurance policy is an action at law. *State Farm Mut. Auto. Ins. Co. v. Calcutt,* 340 S.C. 231, 530 S.E.2d 896 (Ct.App.2000). In an action at law, this court will not disturb the trial court's findings unless they are without any reasonable evidentiary support. *Townes Assocs., Ltd. v. City of Greenville,* 266 S.C. 81, 221 S.E.2d 773 (1976).

## LAW/ANALYSIS

### I. Exclusion of inverse condemnation actions

■ The Fund contends inverse condemnation actions are outside the scope of coverage provided by the policy. We disagree.

Inverse condemnation is a cause of action against a governmental defendant to recover the value of property which has been taken in fact by the governmental defendant, even though no formal exercise of the power of eminent domain has been attempted by the taking agency. While the typical taking occurs when the government acts to condemn property in the exercise of its power of eminent domain, the entire doctrine of inverse condemnation is predicated on the proposition that a taking may occur without such formal proceedings.

\* \* \*

■ The action is not based on tort, but on the constitutional prohibition of the taking of property without compensation.

29A C.J.S. *Eminent Domain* § 381 (1992).

■ The Fund first argues the purpose of the Fund is to provide liability insurance to South Carolina and its political subdivisions in light of the abolition of sovereign immunity. Thus, the Fund argues, the policy cannot provide coverage for any risk for which sovereign immunity has not been waived, such as inverse condemnation, because the government has never been immune from an action alleging a taking of private property. The Fund claims the only risks covered under the policy are those encompassed within the South Carolina Tort Claims Act.[2]

Our Supreme Court addressed this argument in *Town of Duncan v. State Budget & Control Bd.*, 326 S.C. 6, 482 S.E.2d 768 (1997) with respect to a claim under the "Whistleblower Act," codified at South Carolina Code Annotated sections 8–27–10 to –50 (Supp.2000). The Court concluded that the "duty to defend or indemnify should not be predicated on whether the Whistleblower action is covered by the Tort Claims Act.

---

**2.** S.C.Code Ann. §§ 15–78–10 to –200 (Supp.2000).

Rather, the policy itself should be examined to see whether coverage is provided by its terms." *Town of Duncan,* 326 S.C. at 12–13, 482 S.E.2d at 772.

■ The Fund, however, also argues the policy, entitled a "Tort Liability Insurance Policy," covers only actions arising in tort, thereby excluding coverage for inverse condemnation. The policy does not contain an exclusion for inverse condemnation nor does it define "tort."

■ Exclusions in an insurance policy are to be interpreted narrowly and to the benefit of the insured. *McPherson v. Michigan Mut. Ins. Co.,* 310 S.C. 316, 426 S.E.2d 770 (1993). Although the policy is entitled a "Tort" policy, it does not define a tort or exclude actions not sounding in tort, thus does not inherently exclude an action for inverse condemnation. In the absence of an express exclusion, the Fund's distinction between a claim based on tort liability and a claim based on inverse condemnation liability does not resolve the question of coverage under the policy. Rather, pursuant to *Town of Duncan,* 326 S.C. 6, 482 S.E.2d 768 and *McPherson,* 310 S.C. 316, 426 S.E.2d 770, we look to the terms of the policy itself to determine coverage.

## II. The language of the policy

The Fund argues the language of the policy excludes coverage as there was neither "property damage" suffered, nor an "occurrence," as these terms are defined in the policy. We disagree.

### A. "Property Damage"

■ The policy defines property damage as:

(1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or

(2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period.

■ Insurance policies are subject to the general rules of contract construction. *Diamond State Ins. Co. v. Homestead Indus., Inc.,* 318 S.C. 231, 456 S.E.2d 912 (1995). Policy

language is interpreted according to its plain, ordinary, and popular meaning. *Id.*

Otis Johnson and Betty Johnson suffered sink holes and chimney holes on their property. Otis Johnson lost use of his property; he was no longer able to live in his home due to cracks caused by the sink holes. Water from the mine flooded Velma and Jerry Strickland's land. We find sink and chimney holes, cracks in a house's foundation, and flooding are within the ordinary meaning of physical injury to property. As the policy includes physical injury in the definition of property damage, we conclude this harm is clearly within the definition of property damage.

### B. "Occurrence"

The Fund also argues that because the County intentionally operated the mine, the property damage was intentional, and therefore did not amount to an "occurrence." We disagree.

The policy provides:

The Fund will pay on behalf of the insured *all sums which the insured shall become legally obligated to pay as damages because of*

A. Personal Injury or B. *Property Damage* to which this applies *caused by an occurrence....*

Emphasis added. The policy specifically defines "occurrence" as:

an accident, including continuous or repeated exposure to conditions, which result[s] in personal injury or property damage *neither expected nor intended* from the standpoint of the insured.

Emphasis added.

The policy definition of "occurrence" includes unexpected or unintended property damage caused by continuous or repeated exposure. The County's intentional operation of the mine does not equate to an intent by the County to cause property damage. There is no evidence in the record the County operated the mine to create sink holes or cause other property damage. Furthermore, the County's operation of the mine constituted continuous exposure to the neighboring

property owners. Employing the rule requiring this court to interpret an insurance policy provision according to its plain meaning, we conclude the damage to the neighboring property owners resulted from continuous exposure to the mine, and the damage was not intended by the County. *See Diamond State*, 318 S.C. at 236, 456 S.E.2d at 915.

The parties in this action are bound by the provisions of the policy as written. *See Drafts v. Shull Sausage Co.*, 276 S.C. 52, 275 S.E.2d 577 (1981) (stating parties are bound by unambiguous terms of an insurance contract). We accordingly hold the special referee did not err in requiring the Fund to indemnify the County.

### III.  Title to the property

The Fund alternatively argues if there is coverage under the policy, the Fund is entitled to obtain fee simple title to the neighboring properties. The Fund argues the special referee erred in concluding the County did not acquire title to the neighboring properties. The Fund alleges the inverse condemnation award constituted a forced sale of the properties by the neighboring property owners to the County.[3] Thus, the Fund argues, it is entitled to an order requiring the County to deed the properties to the Fund. We find this argument is without merit.

Inverse condemnation actions do not constitute forced sales of property because such actions compensate property owners for the *diminution* in value to their property, not for the full value of the property. *See Yadkin Brick Co. v. Materials Recovery Co.*, 339 S.C. 640, 529 S.E.2d 764 (Ct.App. 2000) (stating that the proper measure of damages for an injury of a permanent nature to real property is the diminution of the market value of the property); *Ravan v. Greenville County*, 315 S.C. 447, 434 S.E.2d 296 (Ct.App.1993) (finding the measure of damages for permanent injury to real property, whether asserted under nuisance, trespass, negligence, or inverse condemnation, is the diminution in the market value of the property). We therefore find no error.

---

3. The Fund cites no authority in support of this argument, which is, at best, conclusory.

For the foregoing reasons, the order on appeal is **AFFIRMED.**

GOOLSBY and CONNOR, JJ., concur.