567 S.E.2d 872

**Francis Clark ANTLEY, Respondent,**

v.

**NOBEL INSURANCE COMPANY, Appellant.**

**No. 3516.**

Court of Appeals of South Carolina.

Heard Dec. 4, 2001.

Decided June 10, 2002.

Rehearing Denied Aug. 22, 2002.

Beverly A. Carroll, of Kennedy, Covington, Lobdell & Hickman, of Rock Hill, for appellant.

Ellen McCloy and E. Alan Kennington, both of George Sink, P.A. Injury Lawyers, of North Charleston, for respondent.

SHULER, Judge:

Francis Clark Antley brought this declaratory judgment action to determine his right to recover uninsured motorist (UM) benefits under a policy issued to his employer by Nobel Insurance Company. The trial court reformed the policy to provide Antley up to $1,000,000 in coverage, offset by any recovery from workers' compensation, and Nobel appeals. We affirm.

## FACTS/PROCEDURAL HISTORY

The trial court decided this case on the following stipulated facts. On February 7, 1995, Francis Antley, while operating a truck owned by his employer, Southern Bulk Haulers, Inc., was seriously injured in an accident caused by an unidentified vehicle in Savannah, Georgia. As a result, Antley filed a "John Doe" action in Georgia seeking coverage under the UM provision of his personal automobile insurance policy. Since the accident occurred during the course and scope of his employment, Antley also sought benefits under the UM provision contained in Southern's commercial policy issued by Nobel Insurance Company. On its face, this policy provided only the mandatory limit of $15,000 for bodily injury caused by an uninsured driver.

Antley subsequently filed a complaint for declaratory judgment asking the court to reform the policy's UM coverage limit because Nobel failed to make a meaningful offer of additional UM coverage to Southern.[1] In its answer, Nobel claimed Antley's exclusive remedy was workers' compensation, but in the event the trial court found otherwise, UM benefits should be limited to $15,000. On March 13, 2000 the parties specifically agreed: 1) that Nobel insured the vehicle driven by Antley under Policy # TAL 1002822, a renewal of Southern's original policy, which provided liability coverage up to $1,000,000; 2) that Nobel offered optional UM coverage via an internally-generated form,[2] which Southern rejected, leaving the UM coverage limit at $15,000; and 3) that Antley eventually received $101,901.55, in workers' compensation benefits, including $13,201.53 for medical expenses.

On June 30, 2000, the trial court issued an order finding Antley was not excluded from pursuing coverage under the UM provision of the policy. The court further held that because Nobel failed to make a meaningful offer of additional UM insurance, Antley was entitled to recover up to the limits

---

1. As the outcome of this action will determine the extent of Nobel's liability in the Georgia "John Doe" proceeding, that action has been stayed pending a final decision in the instant case.

2. Nobel further stipulated its form was neither "identical to the format outlined in" the Code nor "generated with any reference to" S.C. Department of Insurance Form 2006.

of Southern's liability coverage, or $1,000,000. Lastly, the court determined Nobel was entitled to a setoff against such coverage in the amount actually received by Antley from workers' compensation. This appeal followed.

## LAW/ANALYSIS

### Standard of Review

A suit for declaratory judgment is neither legal nor equitable per se; the nature of the suit, therefore, is determined by the underlying issue. *See Felts v. Richland County,* 303 S.C. 354, 400 S.E.2d 781 (1991); *Horry County v. Ins. Reserve Fund,* 344 S.C. 493, 544 S.E.2d 637 (Ct.App.2001). As the issue below involved a determination of uninsured motorist coverage, the action is at law. *Horry County,* 344 S.C. at 497, 544 S.E.2d at 640; *State Farm Mut. Auto. Ins. Co. v. Calcutt,* 340 S.C. 231, 530 S.E.2d 896 (Ct.App.2000). Furthermore, because stipulated or undisputed facts leave only a question of law for the trial court, on appeal this Court reviews "whether the trial court properly applied the law to those facts." *WDW Props. v. City of Sumter,* 342 S.C. 6, 10, 535 S.E.2d 631, 632 (2000); *see J.K. Constr., Inc. v. W. Carolina Reg'l Sewer Auth.,* 336 S.C. 162, 519 S.E.2d 561 (1999).

### Discussion

Nobel asserts two grounds of error in challenging the trial court's ruling. First, Nobel claims Antley is not entitled to recover any UM benefits under Southern's policy, arguing workers' compensation is his sole remedy under both the relevant statutory provision and policy exclusions. Second, Nobel contends that even if Antley is entitled to benefits under the policy's UM provision, his recovery should be limited to $15,000 because Nobel made, and Southern rejected, a meaningful offer of coverage. We address each ground in turn.

### I. Workers' Compensation as Exclusive Remedy

Nobel initially argues Antley's recovery of UM benefits is barred by § 42–1–540 of the South Carolina workers' compensation scheme. In relevant part, this section states that the redress available to an injured employee "shall exclude all

other rights and remedies of such employee ... *as against his employer*, at common law or otherwise...." S.C.Code Ann. § 42-1-540 (1985) (emphasis added). Our supreme court previously has rejected the same argument now advanced by Nobel, finding that workers' compensation gives an employee " 'the right to swift and sure compensation,' " while an employer in turn " 'receives *immunity from tort actions* by the employee.' " *Wright v. Smallwood*, 308 S.C. 471, 475, 419 S.E.2d 219, 221 (1992) (quoting *Parker v. Williams & Madjanik, Inc.*, 275 S.C. 65, 70, 267 S.E.2d 524, 526 (1980)). In *Wright*, the court went on to reiterate that because UM coverage sounds in contract, not tort, "the exclusivity provision of [§ 42-1-540] does not operate to bar [a] contractual claim for UM benefits." *Id.* (footnote citation omitted).

■ Nobel further contends applicable language in Southern's policy limits Antley's recovery to workers' compensation. Specifically, Nobel points to exclusionary language in the "Truckers Coverage Form," which, as the parties stipulated, provides in relevant part:

This insurance does not apply to [any of] the following:

. . . .

3. WORKERS' COMPENSATION

Any obligation for which the "insured" or the "insured's" insurer may be held liable under any workers' compensation, disability benefits or unemployment compensation law or any similar law.

In addition, although not referenced in the stipulation, the ensuing paragraph titled "EMPLOYEE INDEMNIFICATION AND EMPLOYER'S LIABILITY" clearly indicates an intention to exclude:

"Bodily injury" to:

a. An employee of the "insured" arising out of and in the course of employment by the "insured"....

These exclusions purport to eliminate all coverage when the insured employer is liable to pay workers' compensation to an injured employee. Hence, Nobel argues Antley's prior receipt of workers' compensation benefits bars any attempt to recover under the Southern policy's UM provision. We disagree.

It is well settled that uninsured motorist coverage in specified minimum limits is mandatory in South Carolina.[3] *Unisun Ins. Co. v. Schmidt,* 331 S.C. 437, 503 S.E.2d 211 (Ct.App. 1998), *rev'd on other grounds,* 339 S.C. 362, 529 S.E.2d 280 (2000); *White v. Allstate Ins. Co.,* 314 S.C. 167, 442 S.E.2d 195 (Ct.App.1994). The governing statute expressly states:

> (A) No automobile insurance policy or contract may be issued or delivered unless it contains ... [an] uninsured motorist provision undertaking to pay the insured *all sums which he is legally entitled to recover as damages* from the owner or operator of an uninsured motor vehicle....

S.C.Code Ann. § 38–77–150 (2002) (emphasis added). Thus, "[t]he obligation of the insurer under the terms of the statute is to pay an insured all sums which he is legally entitled to recover from the [uninsured] tortfeasor up to the limit of insurance provided." *Nationwide Mut. Ins. Co. v. Howard,* 288 S.C. 5, 12, 339 S.E.2d 501, 504 (1985).

"The uninsured motorist endorsement is the contract which the insurance company makes with the insured to protect him against the uninsured motorist." *Ferguson v. State Farm Mut. Auto. Ins. Co.,* 261 S.C. 96, 100, 198 S.E.2d 522, 524 (1973). Although insurance policies are subject to the normal rules governing contracts, including the parties' right to agree to such terms as they deem appropriate, *see B.L.G. Enters., Inc. v. First Fin. Ins. Co.,* 334 S.C. 529, 514 S.E.2d 327 (1999), the freedom to contract "is not absolute and coverage required by law may not be omitted." *Jordan v. Aetna Cas. & Sur. Co.,* 264 S.C. 294, 297, 214 S.E.2d 818, 820 (1975). Since statutes mandating UM coverage are part of an insurance contract as a matter of law, to the extent policy language conflicts with an applicable statute, the statute prevails. *See Ferguson,* 261 S.C. at 101, 198 S.E.2d at 524 ("[T]he pertinent provisions of the [UM] statutes prevail as much as if expressly incorporated in the policy"); *Schmidt,* 331 S.C. at 440, 503 S.E.2d at 213 ("When the language of the

---

**3.** Although it is now possible to register an uninsured vehicle in South Carolina, *see* S.C.Code Ann. § 56–10–510 (Supp.2001), there has been no change in the law requiring minimum limits of uninsured motorist coverage to be included in every automobile insurance policy issued in the state. *See* § 38–77–150.

policy conflicts with the mandate of the [UM] statute, the statutory language prevails.").

Applying this settled law, we find that to the extent Nobel's policy exclusions purport to bar Antley from pursuing UM coverage, they are void as against public policy and of no effect. As the supreme court stated in *Ferguson:*

> The public policy declared by our uninsured motorist statute imposes an obligation on insurers to provide protection to their insureds against loss caused by wrongful conduct of an uninsured motorist, and any limiting language in an insurance contract which ha[s] the effect of providing less protection than made obligatory by the statutes is contrary to public policy and is of no force and effect.
>
> ... To permit [an insurer] ... to exclude coverage where the insured is entitled to workmen's compensation for his injury or death would be a limitation upon the statutory coverage required by our uninsured motorist statutes.

*Ferguson,* 261 S.C. at 100–01, 198 S.E.2d at 524.

■ Nobel correctly asserts § 38–77–220 (regulating automobile insurance in general) and § 56–9–20(5) (the Motor Vehicle Financial Responsibility Act) each appear to permit such exclusions. Section 38–77–220 provides in pertinent part:

> The automobile policy need not insure any liability under the Workers' Compensation Law nor any liability on account of bodily injury to an employee of the insured while engaged in the employment, other than domestic, of the insured, or while engaged in the operation, maintenance, or repair of the motor vehicle....

S.C.Code Ann. § 38–77–220 (2002). Similarly, § 56–9–20 defines a "motor vehicle liability policy" in relevant part as "[a]n owner's or an operator's policy of liability insurance ... issued ... to or for the benefit of the person or persons named therein as insured...." S.C.Code Ann. § 56–9–20(5) (Supp. 2001). This definition is subject to several "special conditions," one of which contains language identical to that found in § 38–77–220. *See id.* at § 56–9–20(5)(c) (describing what an insurance policy need not cover in complying with the Financial Responsibility Act).

Our supreme court, however, has construed § 38–77–220 as permitting *offsets* for duplicate coverage, not outright exclu-

sions of otherwise available coverage.[4] In *Williamson v. U.S. Fire Ins. Co.*, 314 S.C. 215, 442 S.E.2d 587 (1994), an employee injured in the course of employment sought underinsured motorist coverage from his employer's policy. Pursuant to an offset provision in the policy, the insurer reduced the employee's benefits by an amount equal to his recovery under workers' compensation, and thereafter sought a judgment declaring it had fully satisfied its obligations under the policy. The trial court ruled the insurer was not entitled to a setoff as a matter of public policy and the supreme court reversed, interpreting § 38–77–220 to permit the reduction because "South Carolina law provides that automobile insurance policies need not cover liability under the worker's [sic] compensation law nor liability for bodily injury to an insured's employee." *Id.* at 219, 442 S.E.2d at 589.

In so holding, the court adopted the public policy-based reasoning of *Manning v. Fletcher*, 324 N.C. 513, 379 S.E.2d 854 (1989), a North Carolina case interpreting "an almost identical statute," which held the N.C. Legislature intended to permit offsets to relieve an employer "of the burden of paying double premiums" and to deny "the windfall of a double recovery to the employee." *Id.* at 218, 442 S.E.2d at 588 (quoting *Manning*, 379 S.E.2d at 856). Quite significantly, we think, the court concluded:

> *As long as the employee is able to fully recover the damages sustained,* we believe the better public policy is to encourage employer voluntary coverage by not exposing employers to mandatory duplicative insurance premiums and by not allowing duplicative recoveries by employees. We therefore hold that [§ 38–77–220] allows an employer's automobile insurance carrier to *offset* workers' compensation benefits received by an employee. *The offset shall be applied against the total of damages sustained once the employee has been fully compensated for the injuries.*

*Id.* at 219, 442 S.E.2d at 589.[5]

Lastly, Nobel claims workers' compensation is Antley's only remedy based on the following additional policy exclusion,

---

4. Because § 56–9–20(5)(c) contains language identical to that found in § 38–77–220, the analysis applies equally to that section.

5. Although Nobel also cites *State Farm Mut. Auto. Ins. Co. v. N. River Ins. Co.*, 288 S.C. 374, 342 S.E.2d 627 (Ct.App.1986) as authority for

found in the UM endorsement and titled "LIMIT OF INSUR-ANCE":

> We will not make a duplicate payment under this Coverage for any element of "loss" for which payment has been made by or for anyone who is legally responsible.

In our view, this provision maximally prohibits Antley from recovering both workers' compensation and UM benefits *for the same loss,* and in no way dictates workers' compensation as an exclusive remedy where other elements of loss are recoverable.

The parties stipulated Antley was injured by an at-fault unidentified driver, thereby bringing the accident within the ambit of UM coverage. *See* S.C.Code Ann. § 38–77–30(14) (Supp.2001) ("A motor vehicle is considered uninsured if the owner or operator is unknown."). As discussed above, the exclusions in Southern's policy at most only entitle Nobel to offset Antley's workers' compensation award against any benefits obtained in the John Doe action and cannot operate to foreclose his UM claim.[6] To hold otherwise would permit an

the argument that §§ 38–77–220 and 56–9–20(5)(c) are controlling, that case is inapposite. In *North River,* this Court upheld a policy provision excluding liability coverage for "any employee of an insured arising out of his or her employment," finding such language was "not inconsonant with" the nearly identical predecessor statutes to §§ 38–77–220 and 56–9–20(5). *Id.* at 374, 342 S.E.2d at 627. However, in a crucial distinction from the case at bar, *North River* concerned a negligence claim alleging wrongful death directly against the employer/insured, clearly prohibited by § 42–1–540, whereas here Antley seeks coverage for injuries caused by an uninsured motorist.

**6.** The trial court in fact granted Nobel an offset equal to Antley's workers' compensation award. This may have been error, as such a limitation on UM benefits arguably is invalid as a matter of law. *See, e.g., Williamson,* 314 S.C. at 219, 442 S.E.2d at 588 ("In [*Ferguson* ] we held that an insurer cannot offset workers' compensation benefits received by an employee, notwithstanding policy provisions to the contrary."); *Ferguson,* 261 S.C. at 101, 198 S.E.2d at 525 ("The general rule supported by the majority of the decided cases is that an uninsured motorist endorsement provision for the reduction of payments by amounts received by the insured under any workmen's compensation law has been held void or invalid and unenforceable, on the ground that such provision reduced the effective coverage below that required by the statute and was contrary to public policy."); *State Farm Mut. Auto. Ins. Co. v. Calcutt,* 340 S.C. 231, 235, 530 S.E.2d 896, 897 (Ct.App.2000) (stating *Williamson* permitted an offset "because the

employer/insured to enter into an insurance contract excluding uninsured motorist coverage for its employees as a matter of course in violation of well-established public policy.

In addition, we believe our decision comports with the underlying purpose and policies of both the uninsured motorist statutes and the law of workers' compensation. UM benefits substitute for those benefits Antley would have received from the motorist who caused his injuries, if known. *Ferguson,* 261 S.C. at 101–02, 198 S.E.2d at 525 (" 'The general rule is that an insurer may not limit its liability under uninsured motorist coverage ... because the insured is entitled to recover the same amount he would have recovered if the offending motorist had maintained liability insurance.' ") (citations omitted). On the other hand, workers' compensation is intended to provide, without consideration as to fault, sure and swift reimbursement to injured employees for medical expenses and lost wages while immunizing employers from direct tort liability arising from a workplace accident. *See Wright,* 308 S.C. at 475, 419 S.E.2d at 221. Moreover, under our workers' compensation scheme, an injured employee may sue a non-employer third-party tortfeasor for negligence, thereby obtaining additional monies for damages such as pain and suffering, loss of consortium, etc., subject only to an offsetting lien retained by the compensation carrier. *See* S.C.Code Ann. § 42–1–560(a) & (b) (1985).

We therefore find Antley is not precluded from pursuing a claim for uninsured motorist benefits under Southern's policy.

## II. Meaningful Offer of Uninsured Motorist Coverage

 Noble next argues that even if Antley is entitled to recover UM benefits under Southern's policy, coverage should be limited to $15,000. We disagree.

coverage was *voluntarily* provided by the employer"; court noted "the linchpin of *Ferguson* is the mandatory nature of UM coverage" as opposed to the optional nature of UIM) (emphasis added). However, because Antley did not appeal the trial court's ruling in this regard, the holding is the law of the case and the issue may not be considered on appeal. *See Unisun Ins. v. Hawkins,* 342 S.C. 537, 537 S.E.2d 559 (Ct.App.2000) (stating an unappealed ruling is the law of the case which the appellate court must assume was correct).

In addition to coverage mandated by law, automobile insurance carriers must offer the insured optional uninsured motorist coverage up to the liability limits of the insured's policy. S.C.Code Ann. § 38–77–160 (2002). This offer must be effective and "meaningful to the insured." *Todd v. Federated Mut. Ins. Co.,* 305 S.C. 395, 398, 409 S.E.2d 361, 364 (1991); *see State Farm Mut. Auto. Ins. Co. v. Wannamaker,* 291 S.C. 518, 521, 354 S.E.2d 555, 556 (1987) (holding the insured must "be provided with adequate information, and in such a manner, as to allow [him] to make an intelligent decision of whether to accept or reject the coverage"). The sufficiency of the offer is a question of law for the court. *See, e.g., Hanover Ins. Co. v. Horace Mann Ins. Co.,* 301 S.C. 55, 389 S.E.2d 657 (1990); *Bower v. Nat'l Gen. Ins. Co.,* 342 S.C. 315, 536 S.E.2d 693 (Ct.App.2000). When an insurer fails to make a meaningful offer, the insured is entitled to reform the policy to reflect optional coverage in an amount equal the insured's policy liability limits. *Todd,* 305 S.C. at 399, 409 S.E.2d at 364.

Our supreme court adopted the test used to determine whether an offer of optional insurance coverage is meaningful in *Wannamaker:* (1) the insurer's notification process, either oral or written, "must be commercially reasonable," (2) the insurer "must specify the limits of optional coverage and not merely offer additional coverage in general terms," (3) the insurer "must intelligibly advise the insured of the nature of the optional coverage," and (4) the insured "must be told that optional coverages are available for an additional premium." 291 S.C. at 521, 354 S.E.2d at 556. An insurer must meet all four elements of the test to render· an offer meaningful. *Ackerman v. Travelers Indem. Co.,* 318 S.C. 137, 144, 456 S.E.2d 408, 411 (Ct.App.1995) ("The insurer must satisfy all four prongs [of *Wannamaker*] to prove there was an effective offer ... and failure of any one ... vitiates the offer and requires reformation of the policy. . . .").

The burden of proving a meaningful offer of optional coverage was made rests with the insurer. *See Butler v. Unisun Ins. Co.,* 323 S.C. 402, 475 S.E.2d 758 (1996); *Todd,* 305 S.C. at 398, 409 S.E.2d at 364. S.C.Code Ann. § 38–77–350 (2002) grants an insurer who utilizes a properly executed and approved offer form that minimally complies with the statute a conclusive presumption "that there was an informed, knowing

selection of coverage." *Id.* at § 38–77–350(B); *see* § 38–77–350(A) ("The form, at a minimum, must provide for each optional coverage required to be offered: (1) a brief and concise explanation of the coverage, (2) a list of available limits and the range of premiums for the limits, (3) a space for the insured to mark whether the insured chooses ·to accept or reject the coverage and a space for the insured to select the limits of coverage he desires, (4) a space for the insured to sign the form which acknowledges that he has been offered the optional coverages, [and] (5) the mailing address and telephone number of the Insurance Department which the applicant may contact if the applicant has any questions that the insurance agent is unable to answer."). Here, Nobel does not dispute it is not entitled to this presumption because its form does not minimally comply with § 38–77–350(A). The question, then, is whether Nobel met its burden of showing it made a meaningful offer to Antley's employer, Southern Bulk Haulers, Inc.

The record indicates Nobel's sole evidence of a meaningful offer was its "Rejection—Selection" form for UM and UIM coverage. Although Southern's representative did sign a form purporting to reject additional uninsured coverage above the $15,000 required by South Carolina law, this fact is not dispositive as "a noncomplying offer has the legal effect of no offer at all." *Hanover*, 301 S.C. at 57, 389 S.E.2d at 659. In our view, the form provided by Nobel decidedly fails the "meaningful offer" test set forth in *Wannamaker*. Although Nobel's form states Southern was given the opportunity to purchase UM/UIM coverage "in amounts up to the automobile liability limits," the form reflects Southern was then limited to the following choices:

1. I hereby reject the property damage feature of the Uninsured/Underinsured Motorists Coverage only.

2. I hereby reject Uninsured/Underinsured Motorists Coverage for limits in excess of the following specified limits:

 Bodily Injury $15,000/$30,000

 Property Damage $5,000

Combined Single Limit

3. I hereby accept Uninsured/Underinsured Motorists Coverage in its entirety, realizing that coverage will apply only for the motor vehicles which meet the definition of "owned automobiles" as provided in this policy.

Clearly Nobel, by limiting the insured to the three choices listed above, did not effectively offer *any* additional coverage, as it failed to list a single coverage amount accompanied by a corresponding premium. Nobel's form, which at most offers such coverage only in general terms, and neither apprises the insured of the nature of UM/UIM coverage nor relates that optional coverages are available for an additional premium, does not satisfy *Wannamaker*. *See Ackerman*, 318 S.C. at 144–45, 456 S.E.2d at 412 ("To be effective, the insurer must specify the limits of optional coverage and not merely offer it in general terms.... [Insurer] also failed to provide [insured] with a separately stated premium amount for optional coverage at the specified limits.... This omission is also fatal and renders the offer ineffective.... To be effective, the offer must be explained in a format and language that allows the insured to make an informed decision to accept or reject the coverage...."); *Amer. Sec. Ins. Co. v. Howard*, 315 S.C. 47, 51–52, 431 S.E.2d 604, 607–08 (Ct.App.1993) ("Because it did not give the insured a choice of optional coverage limits, the form failed to make an effective offer.... [T]he form offered [optional] coverage without specifically stating the limits of the coverage. To be effective, the offer must specify the limits of the additional coverage in dollar amounts. If it fails to do so, it does not constitute a meaningful offer.... [T]he form does not provide the insured with a separately stated premium amount for coverage at the specified limits. This omission likewise renders the offer ineffective.... [T]he form fails to explain the nature of [optional] coverage and how it differs from other coverages. It omits any description that would allow the insured to make an informed decision to accept or reject the coverage. This omission also [is fatal].") (internal citations omitted), *overruled on other grounds by Concrete Servs., Inc. v. U.S. Fid. & Guar. Co.*, 331 S.C. 506, 498 S.E.2d 865 (1998).

Nobel correctly contends it is not required to make a new offer of UM coverage where the policy renews an existing policy. *See* S.C.Code Ann. § 38–77–350(C)(2002) ("An automobile insurer is not required to make a new offer of coverage on any automobile insurance policy which renews, extends, changes, supercedes, or replaces an existing policy."). However, Nobel's contention overlooks the fact that it did make a new offer in this instance, although not required. In so doing, Nobel rendered application of § 38–77–350(C) moot.

Moreover, Nobel's argument regarding renewal fails to recognize that it still bears the burden of demonstrating a meaningful offer of UM coverage was made at some point in the past. *See McDonald v. S.C. Farm Bur. Ins. Co.*, 336 S.C. 120, 125, 518 S.E.2d 624, 626 (Ct.App.1999) ("Where [§ ] 38–77–350(C) states the insured is not required to make a 'new' offer, it clearly envisions the circumstances where the insurer has already made an 'old' offer."); *Ackerman*, 318 S.C. at 142, 456 S.E.2d at 411 ("[T]he only reasonable way to interpret the language in § 38–77–350(C) is to recognize that the insurer may rely on the *effective* past offers it has given to its insureds when these insureds continue coverage with the same insurer.") (emphasis added).

Here, the only evidence introduced by Nobel in support of its argument that Southern's policy had been renewed was the deposition testimony of Trudy Pearce Payne, Vice President of Lancer Insurance Company, which recently had purchased Nobel's Commercial Casualty Division. Payne stated she did not have a copy of the original policy, but that "[t]here would have been some type of uninsured, underinsured rejection form in each of those policies in the situation where they rejected coverage." She further testified she could not tell whether the UM/UIM rejection/selection form employed in this instance was the same form Nobel used when the policy initially was issued "[w]ithout looking at the [original] policy." Thus, as Nobel failed to offer *any* evidence tending to show it previously made a meaningful offer of UM coverage to Southern, it may not rely on § 38–77–350(C) to avoid reformation.

Because the record reveals Nobel failed to make a meaningful offer of UM coverage, the policy is reformed as a matter of

law to include such coverage up to the liability limits of Southern's policy.

**AFFIRMED.**

CURETON, J., concurs.

STILWELL, J., dissents in a separate opinion.

STILWELL, Judge (dissenting):

I respectfully dissent. While I agree with the reasoning and result of issue I, I disagree with the analysis and conclusion of issue II.

The stipulation of facts entered into by the parties and by which they and this court are bound clearly indicates that this was a renewal of an existing policy. Section 38–77–350(A) mandates the form required to "be used by insurers for all *new* applicants." This is the form which Nobel is faulted for not using. However, the named insured of this policy was not a new applicant. Subsection (A) therefore does not apply, and subsection (C) is invoked. My disagreement with the majority centers on the meaning and application of S.C.Code Ann. Section 38–77–350(C).[7]

To avoid the consequences of the application of the plain language of this subsection, the majority takes two tacks. First, the majority contends that even though Nobel does not have to make a new offer, it did so, thereby rendering the application of section 38–77–350(C) moot. However, that reasoning is faulty because the majority had already determined that since Nobel failed to make a meaningful offer, it had the legal effect of no offer at all. Second, the majority contends that subsection (C) may be invoked only if Nobel proves that a meaningful offer was made at some time in the past. This is a novel issue in this state.

The majority cites the case of *McDonald v. S.C. Farm Bureau Ins. Co.*, 336 S.C. 120, 518 S.E.2d 624 (Ct.App.1999), for the proposition that when an insured is not required to

7. An ... insurer is not required to make a new offer of coverage on any automobile insurance policy which renews, extends, changes, supersedes, or replaces an existing policy. S.C.Code Ann. § 38–77–350(C) (Supp.2001).

make a "new offer", it clearly envisions a circumstance where the insured has already made an "old" offer. However, the facts involved and the issue raised in that case differ substantially from the circumstances here. In *McDonald*, a new named insured replaced the original insured and no offer of optional coverage was ever made to the new insured. The *McDonald* court ruled that under those circumstances a new policy was created with a new named insured who had never had the opportunity to accept or reject the optional coverage. Here, we have the same named insured in a renewal policy. Had the legislature intended the result reached by the majority, the statute easily could have been worded to accomplish that objective by prefacing the section with "where a complying offer was originally made." The statute, however, contains no such condition when an insurance policy is being renewed.

To hold in this case and on these facts that the policy must be reformed to provide $1,000,000 uninsured motorist coverage renders section 38–77–350(C) meaningless. While I agree Antley is entitled to uninsured motorist coverage, he is limited to the minimum required by law, that is $15,000.